Williamson, by, &c., v. Louisville Industrial School of Reform.

*CASE 42—PETITION ORDINARY—JANUARY 27.

# Williamson, by, &c., v. Louisville Industrial School of .Reform.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

95   251
97   463

95   251
d105  846
1105  850

95   251
e122  21ᗑ
e122  218

95   251
e127  467

95   251
e131  293
135   575

AN ACTION DOES NOT LIE AGAINST THE LOUISVILLE INDUSTRIAL SCHOOL OF REFORM FOR AN ASSAULT upon an inmate by an officer or employe thereof, the institution being a charity maintained by taxation and State aid. Damages are to be paid out of the pocket of the wrong-doer, and not from the trust fund.

SAMUEL B. KIRBY AND GEORGE .WEISSINGER SMITH FOR APPELLANT.

Brief withdrawn. .

T. L. BURNETT FOR APPELLEE.

The defendant is an agency of the Commonwealth of Kentucky and can not be sued without the consent. of the Commonwealth. (Farnham v. Pierce, 141 Mass., 203; 1 Duv., 297; 81 Ky., 212; 82 Ky., 666; 13 Bush, 226.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The appellee, the Louisville Industrial School of Re-form, was created a body-corporate by an act of the General Assembly in 1854, under the name of the Louis-ville House of Refuge. Its object and business was to take charge of such youths as might be committed to it, and care for their moral and physical training and educa-tion. It was a charity, and its purpose was reformation by training its inmates to habits of industry and by instill-ing into their minds the principles of right living to the end that they might become useful citizens of the State, rather than fill its prisons and poorhouses.

---

*With this case as re-published in 23 L. R. A., 200, is a note revieving the Eng-lish and American decisions on the subject of the liability of a charitable institution for negligence. .

The incorporators and their successors are under the control and oversight of the Legislature, and are mere instrumentalities of the Commonwealth. The State interposed in behalf of neglected and abandoned children within its confines in its ·capacity of *parens patriæ*, and assumed the guardianship of such children as were committed to the institution. It was an agency of the State,. and maintained by taxation and State aid.

The appellant, a boy of ten years of age, was committed to the care, control and restraint of the institution,. and his petititon brought by his next friend, Thomas, alleges that without fault on his part, one of the servants and employes of the appellees, and known by it to be incompetent and unfit for such service, struck and beat the appellant in such cruel and inhuman manner that he was caused great suffering in mind and body, and was permanently injured and damaged, etc.

To this petition a general demurrer was sustained and the petition dismissed. The correctness of this judgment is the question on this appeal, and while it has been determined directly, the general principles are well established. The functions of the institution are governmental. As said in Farnham v. Pierce, 141 Mass., 203,. "It is a provision by the Commonwealth, as *parens patriæ,.* for the custody and care of neglected children, and is intended only to supply to them that parental custody which they have lost."

In Perry v. House of Refuge, 63 Md., 20, it was held that an action does not lie against a State House of Refuge for an assault made on an inmate by an officer thereof. It is there said : " Youths, in whom the seeds of vice have already germinated, are placed there under proper re-

straint, so that the growth of crime may be arrested or eradicated in its incipiency. Funds are contributed by individuals impelled by philanthropic motives, and donations are obtained from municipal and State treasuries. These are the funds of the institution, controlled by the managers, not for their own profit or benefit, but solely for the charitable purposes designated by its organic law. . . . Several of the most eminent judges in England expressed themselves with much emphasis in opposition to an allowance of damages out of a fund so held by fiduciary agents;" and the principle determined in a number of English cases that " damages are to be paid out of the pocket of the wrongdoer, and not from the trust fund," was approved.

It is contended that these cases followed the older decisions in England, and that the latter have been since overruled. Be this as it may, the principle announced seems entirely just and reasonable. If the funds of these institutions are to be diverted from their intended beneficent purposes by law suits and judgments for damages for negligent or malicious servants, their usefulness— indeed their existence—will soon be a thing of the past.

The judgment dismissing the petition is affirmed.