LYLE et al. v. NATIONAL HOME FOR DISABLED VOLUNTEER SOLDIERS.

(Circuit Court, E. D. Tennessee. March 15, 1909.)

No. 1,464.

ARMY AND NAVY (§ 52*)—NATIONAL HOME FOR DISABLED VOLUNTEER SOLDIERS —LIABILITY TO ACTION FOR TORTS—"POWER TO SUE AND BE SUED AT LAW AND IN EQUITY."

The National Home for Disabled Volunteer Soldiers, being a charitable institution engaged as an agency of the federal government in the discharge of a governmental function, is not subject to suit in an action sounding in tort to recover damages for the alleged unlawful and wrongful or negligent acts of its officers in diverting and polluting the waters of a spring situated on lands of the plaintiff, the power "to sue and be sued at law and in equity" conferred on the corporation by Rev. St. § 4825 (U. S. Comp. St. 1901, p. 3337), being limited to matters within the scope of the other corporate powers with which it is vested.

[Ed. Note.—For other cases, see Army and Navy, Dec. Dig. § 52.*

Liabilities of charitable institutions for negligence, see note to Powers v. Massachusetts Homœopathic Hospital, 47 C. C. A. 134.]

Action at Law.

The declaration in this case is as follows:

"The plaintiffs, * * * residents of the Ninth civil district of Washington county. Tenn., sue the defendant, the National Home for Disabled Volunteer Soldiers, a corporation created under the laws of the United States of America, before the court by issuance of proper service of process, for that:

"The plaintiffs are the owners of a certain tract of land consisting of about 17 acres, adjoining the lands of defendant near Johnson City, Tenn., and located east of said defendant's land down the creek, known as 'Bush Creek,' from the same, on which is located a beautiful home, which home and tract of land have been for more than 50 years, and as far back as the memory of man runs, supplied with water from a beautiful spring, located upon said tract of land within a few hundred feet of the residence, and defendant the

National Home for Disabled Soldiers has within the last year diverted and destroyed the flow of the same by the erection of what is termed a 'disposal plant' for the consumption of the sewerage and waste for what is known as the 'Hospital Group' and other buildings on its reservation, and the construction of other works, stopping thereby the flow of said spring almost entirely, even during the wet seasons of the year, and polluting the same so as to be unfit for use to the extent that the same does flow, in seasons when the same is not entirely cut off.

"Plaintiff avers that the act of defendant, the National Home for Disabled Volunteer Soldiers, in diverting said stream from its natural channel and polluting the same, as aforesaid, is unlawful, and without excuse or justifications, and to the great injury and damage of plaintiff's tract of land and home, wherefore they sue for $2,000.00 damage, and demand a jury to try the issue."

The defendant filed a plea of not guilty.

Upon the trial of the case the plaintiffs introduced evidence tending to show that the defendant, in excavating for a foundation for the disposal plant upon the tract of land on which the National Home for Disabled Volunteer Soldiers was located, had diverted the waters of an underground stream supplying a spring upon the plaintiffs' land, causing it to dry up at certain seasons of the year, and diminishing its flow at all times, thereby injuring the spring and depreciating the value of plaintiffs' tract of land.

At the conclusion of the testimony offered in behalf of plaintiffs the defendant moved the court for peremptory instructions in favor of the defendant. This motion was sustained by the court, and the jury was instructed to return a verdict for the defendant upon the ground that the defendant, as an agency of the government, was not subject to suit for the cause of action alleged. A verdict was returned accordingly, and plaintiffs thereupon moved for a new trial.

S. E. Miller and Harr & Burrow, for plaintiffs.

S. C. Williams, for defendant.

SANFORD, District Judge. After careful consideration, I am of opinion that the jury was properly directed to return a verdict for the defendant upon the ground that, as an agency of the government, it was not subject to suit in this court for the cause of action alleged.

1. It is expressly conceded in plaintiffs' brief that the power given the defendant by Congress "to sue and be sued in courts of law and equity" (Rev. St. § 4825 [U. S. Comp. St. 1901, p. 3337]) "does not include the power to be sued for tort, for the negligence of its officers"; but it is earnestly insisted that the court was in error in assuming that this is an action of tort; that the defendant has committed no tort, but has merely taken from plaintiffs a stream of water which it had the right to take in the legal conduct of its affairs, while acting within the scope of its delegated powers, in excavating for a foundation for its disposal plant, under the power expressly delegated to it to "procure sites  *  *  *  and have the necessary buildings erected" (Rev. St. 4830 [U. S. Comp. St. 1901, p. 3342]); that having thus taken plaintiffs' property without compensation, in the exercise of its express powers, it is "liable to be sued for the value of the property so taken"; and that having, it is claimed, the power of eminent domain under Act Aug. 1, 1888, c. 728, 25 Stat. 357 (U. S. Comp. St. 1901, p. 2516), conferring the right upon any officer of the government authorized to procure real estate for the erection of a public building or other public use, to condemn the same under judicial process, the right now exists in accordance with the Tennessee prac-

tice, as declared in Duck River Railroad Co. v. Cochrane, 3 Lea (Tenn.) 478, to bring suit in this court to recover the value of the property taken in the exercise of this power, with damages.

However, without now determining whether by analogy to the case of backing up water so as to overflow the land of another (Pumpelly v. Green Bay Co., 13 Wall. 166, 20 L. Ed. 557), the diversion of water from plaintiffs' property, where there is no direct encroachment upon plaintiffs' property but merely consequential damages arising from the defendant's use of its own property, could be considered as a taking of plaintiffs' property (Langford v. United States, 101 U. S. 341, 25 L. Ed. 1010; Hill v. United States, 149 U. S. 593, 13 Sup. Ct. 1011, 37 L. Ed. 862), or whether, if so, under proper pleadings, an action to recover the value of the property so taken in the exercise of any power delegated to the defendant would have lain in this court, the present suit, not being a suit of this character, is clearly not maintainable upon such theory.

The declaration does not allege that the defendant has taken the plaintiffs' property in the exercise of any of its corporate powers, or that it has taken their property at all, either in the exercise of the right of eminent domain or of any right whatever, either governmental or proprietary, or that it has appropriated any of plaintiffs' property to its own use or benefit, for any purpose. On the contrary, the declaration specifically avers, as the sole cause of action alleged, that the defendant, by the erection of a disposal plant and the construction of other works, has diverted and destroyed the flow of a spring upon the plaintiffs' property, stopping its flow almost entirely, and polluting the same so as to render it unfit for use in seasons when the same is not entirely cut off; and that the act of the defendant "in diverting said stream from its natural channel and polluting the same, as aforesaid, is unlawful, and without excuse or justification, and to the great injury and damage of plaintiffs' tract of land and home, wherefore they sue for $2,000 damage." Clearly, under this declaration, this is not a suit to recover for the value of property taken by the defendant—in which the measure ·of the recovery would be very different from that in an action of damages (Alloway v. Nashville, 88 Tenn. 512, 13 S. W. 123, 8 L. R. A. 123)—nor is it in any respect based upon any alleged action of the defendant in the exercise of the right of eminent domain or of any of its delegated powers; but it is plainly and unmistakably an action sounding solely in tort, to recover damages both for the diversion and pollution of plaintiffs' spring, alleged to have been caused by the defendant unlawfully and without excuse or justification. It must therefore stand or fall as an action for damages to plaintiffs' property, caused by the defendant's tort; and, if it cannot so stand, it cannot now be maintained upon any other theory.

2. I think it clear, however, under the authorities, and independently of the concession of plaintiffs' counsel, that the defendant is not liable in such action of tort. The clear weight of authority is to the effect that a charitable institution, such as a hospital, whose foundation is laid in donations to be held in trust as a public charity, and which is operated as an eleemosynary institution, without private gain, and

dependent upon charitable gifts for its support, is not liable for the tortious and negligent acts of its officers, managers, and agents, since its trust funds cannot be diverted to such purposes, although its officers, managers, or agents may be individually liable to the injured party. Abston v. Waldon Academy, 118 Tenn. 24, 102 S. W. 351, 11 L. R. A. (N. S.) 1179; Parks v. Northwestern University, 218 Ill. 381, 75 N. E. 991, 2 L. R. A. (N. S.) 556; Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602, 45 Am. St. Rep. 427; McDonald v. Massachusetts General Hospital, 120 Mass. 432, 21 Am. Rep. 529; Benton v. Boston Hospital, 140 Mass. 13, 1 N. E. 836, 54 Am. Rep. 436; and note, Williamson v. Louisville Industrial School, 95 Ky. 251, 24 S. W. 1065, 15 Ky. Law Rep. 629, 23 L. R. A. 200.

While, however, there is some diversity of opinion as to this rule when applied to a private charitable institution, if not to a municipal charitable institution, it is well settled that a charitable corporation created by the state itself for governmental purposes solely, owned and maintained by the state, and engaged in the discharge of its public duties, from the performance of which it derives no benefit, is, as an agency of the state, unless otherwise expressly provided by statute, exempt from liability to a private action for negligence in the discharge of its duties. This general rule, which was stated, obiter, in Lane v. Minnesota Agricultural Society, 62 Minn. 175, 64 N. W. 382, 29 L. R. A. 708, has been applied in the case of a state reform school, in Williamson v. Louisville Industrial School, 95 Ky. 251, 24 S. W. 1065, 15 Ky. Law Rep. 629, 23 L. R. A. 200, 44 Am. St. Rep. 243; a state hospital, in Maia v. Eastern State Hospital, 97 Va. 507, 34 S. E. 617, 47 L. R. A. 577; a state agricultural society in A'Hern v. Iowa Agricultural Society, 91 Iowa, 97, 58 N. W. 1092, 24 L. R. A. 655; and a state's prison, in Moody v. State's Prison, 128 N. C. 12, 38 S. E. 131, 53 L. R. A. 855.

And in the case of Overholser v. National Home, 68 Ohio St. 236, 67 N. E. 487, 62 L. R. A. 936, 96 Am. St. Rep. 658, this rule was specifically applied to the case of a National Home for Disabled Volunteer Soldiers, it being held that such a National Home, being a corporation created by Congress for the purpose of performing an appropriate and constitutional function of the federal government, for national purposes only, and supported entirely by funds supplied by the general government, is, as such, a governmental agency, and a part of the government of the United States, and, as such, cannot be sued in an action sounding in tort for the unlawful collection and discharge upon adjoining property of water, sewage, and other noxious substances, such suit being in effect a suit against the government and its property, there being no corporate fund or property applicable to the payment of a judgment in such action except by the seizure of the property and funds supplied by the government for the purposes for which the Home was created, and without which it must cease to exist. It was furthermore expressly held that the grant of power to the National Home "to sue and be sued at law and in equity"—upon which plaintiffs rely in their brief—must be regarded as "imposing the power and liability to sue and be sued in respect to such matters only as are within the scope of the other corporate powers of the defend-

ant," and that the Home not having been given the right to commit wrongs upon individuals, and it not having been contemplated that it would do so, the right to sue the Home "for a tort was never contemplated or conferred."

I regard the opinion in this case, which is clearly reasoned and contains a full discussion of the authorities and principles upon which it is based, as conclusive of the case at bar, there being no difference in principle, so far as the present question is concerned, between an action sounding in tort for the discharge of water and noxious substances upon the plaintiffs' land and an action sounding in tort for the wrongful diversion and pollution of water running to the plaintiffs' land.

While it is true that plaintiffs insist that the recognition in this opinion of the right to sue a National Home in respect to matters within the scope of its corporate powers involves the right to sue the present defendant for the value of plaintiffs' property taken by it in the exercise of its power to erect necessary buildings and in the exercise of the power of eminent domain which it is also claimed to possess, it is clear that, even if this be so—as to which no opinion is now expressed—it has no application to the present case, where the declaration does not seek to recover the value of any property alleged to have been taken by defendant in the exercise of any of its corporate powers, but, as before stated, seeks damages only for injuries resulting from the diversion and pollution of water, and alleged to have been caused by the defendant, unlawfully and without excuse or justification, and is purely and simply an action for damages, sounding in tort. And, as was held in the Overholser Case, the right to sue a National Home "for a tort was never contemplated nor conferred."

The underlying principle of the Overholser Case, that the National Home is a governmental agency, is furthermore conclusively determined by the case of Ohio v. Thomas, 173 U. S. 276, 19 Sup. Ct. 453, 43 L. Ed. 699, in which it was held that a National Soldiers' Home is a federal creation, under the direct and sole jurisdiction of Congress; that its governor, in making provision for feeding the inmates under the direction of a board of managers, and with the assent and approval of Congress, is engaged in the internal administration of a federal institution; and that in feeding the inmates of the Home in accordance with the provision made by Congress he is acting as a federal officer under and by virtue of valid federal authority, and in the performance of such duty is not subject to the laws of the state or liable for violating a state statute in reference to the use of oleomargarine.

I therefore conclude, following the direct authority of the Overholser Case, that the defendant Home, being a charitable institution, engaged as an agency of the federal government, in the discharge of a governmental function, is not subject to suit in the present action for tort, and that its funds cannot be diverted to the payment of any judgment that might be recovered herein.

As to whether the defendant would have been or may yet be liable in this court in another form of action, or whether the plaintiffs may

have any other mode of redress, if their property rights have been in fact impaired, it is unnecessary to determine here; but if injury has been done, and no other remedy has been provided, "it is always to be presumed," as stated in the passage from Cooley on Torts quoted in the Overholser Case, "that the legislative authority will make the proper provision for redress when its attention is directed to the injury."

3. Upon the trial of this case the evidence furthermore left me in great doubt whether the plaintiffs had shown a known and defined channel of the subterranean water course in question, whose course could have been determined by reasonable inference from the pre-existing condition of the surface of the ground, so as to have made the defendant liable in any case for the diversion of such water course, under the rule laid down in 3 Farnham's Water and Water Rights, § 974, p. 2799, and Gould on Waters, § 281. Being in doubt upon this question, however, it was not stated as a ground of the peremptory instructions to the jury, and, not having been furnished with a transcript of the testimony or had further opportunity to consider the evidence, no opinion is expressed upon this point at this time.

An order will be entered overruling the motion for a new trial, at the plaintiffs' cost.