### Emery, By, etc. v. Jewish Hospital Association.

(Decided December 16, 1921.)

## Appeal from Jefferson Circuit Court
## (Common Pleas, Second Division).

1. Infants—Contributory Negligence—Pleading.—A plea of contrib-
utory negligence, which does not contain an allegation that the
plaintiff is over the age of sixteen years, does not state a com-
plete defense to a petition, where a plaintiff under sixteen years
of age sues for damages for a personal injury incurred in an
employment forbidden to a youth under sixteen years of age by
section 331a, Kentucky Statutes.

2. Charities—Rights and Liabilities.—A corporation, organized under sections 879, 880, 881 and 882, Kentucky Statutes, for and conducting a hospital for the poor and needy sick, which has no stockholders and its trustees and directors receive no compensation for their services; its funds being donated to it to be used in charitable uses and are so used and no profit or gain being realized by the corporation or any person concerned in its management, is not liable in damages to any person for an injury inflicted by the negligence of a manager, servant or agent of the corporation but, its immunity from damages is upon the same plane as a charity governmentally conducted.

3. Charities—Liability for Damages to Infants.—A charity organized under sections 879, 880, 881 and 882, Kentucky Statutes, in whose service a youth is employed in violation of section 331a, Kentucky Statutes, and incurs an injury is not liable for the damages, but the manager, trustee, or servant of the institution, who employed the youth and set him to the forbidden employment is liable for the damages suffered by him as well as the penalties denounced by the statute.

R. RUTHENBURG and E. D. BENNETT for appellant.

SELIGMAN & SELIGMAN for appellee.

Opinion of the Court by Chief Justice Hurt—Affirming.

The appellant, Andrew Emery, who sues by his guardian, avers in his petition that he is only fifteen years of age, and while of that age, was, in violation of the provisions of section 331a, Kentucky Statutes, employed for wages by the appellee, to operate an elevator on its premises, and while so engaged was, through the negligence of appellee, its servants, agents and employes, caused to suffer a personal injury in the loss of a toe to his damage, in the sum of $3,000.00. While the petition avers that the appellee is a corporation engaged in operating a hospital, it contains no averment that it is a charity.

The appellee answered in four paragraphs. The first was a traverse of the allegations of the petition, except that alleging that appellant was an employe of appellee. The averment that he was only fifteen years of age was denied, and it was affirmatively alleged that he was over the age of sixteen years at the time of his employment and injury.

The second paragraph contained only one averment, and that was that the appellant was, at the time of employment and injury, above the age of sixteen years.

This paragraph containing the single allegation presented no defense to the petition, except to the extent that the unlawful employment of a person under the age of sixteen years, in operating an elevator, should be held to be negligence sufficient to support the action, but was really surplusage, as the issue as to appellant's age was already made in the first paragraph.

The third paragraph is a plea of contributory negligence, without any averment that the appellant was above the age of sixteen years, or denial that he was under that age.

The fourth paragraph contained no denial that appellant was under the age of sixteen years, and presents for a defense the allegations that the appellee is a charitable institution and immune from a claim for damages on account of negligence of its servants, agents and employes, or negligence to be attributed to it. It is alleged that it is a corporation duly organized and existing under sections 879, 880, 881 and 882, Kentucky Statutes, providing for the organization and incorporation of religious, educational and charitable institutions; that the principle object and purpose for which it was formed and for which its existence is continued, was and is to found and maintain a hospital for the poor and needy sick; its officers and trustees receive no salaries; its funds arise from gifts, donations and contributions by individuals, who make same for the purpose that they shall be held by the trustees and devoted exclusively to purely charitable uses in the conduct of its hospital; and that every sum received is held by the appellee as a trustee and applied to those charitable uses and no other. The ninth section of its articles of incorporation, which is made a part of the answer, provides:

"No person shall ever derive private pecuniary profit from the operations of this association."

The trustees are elected by the persons who contribute to providing the funds for the operations of the hospital.

The appellant offered a demurrer to each of the two last paragraphs of the answer. The court held that each of them presented a complete defense to the matters plead in the petition, and hence overruled each of the demurrers, and appellant declining to further plead, the petition was dismissed, and appellant has appealed.

(a) It is readily apparent that the third paragraph which presents the defense of contributory negligence is

not a complete defense to the allegations of the petition, since the allegations in the petition fail to show that the appellee is a charitable institution, and contributory negligence is not a defence where the employment is unlawful as it would be if the appellant was under the age of sixteen years, as alleged in the petition. Casperson v. Michael, by etc., 142 Ky. 314; Smith's Admr. v. National Coal and Iron Co., 135 Ky. 671; Louisville H. & St. L. Ry. Co. v. Lyons, 155 Ky. 396; Higgs Mfg. Co. v. Griesenger, Admr., 145 Ky. 1; Stearns Coal & Lumber Co. v. Tuggle, etc., 156 Ky. 714; Carter Coal Co. v. Love, 173 Ky. 49.

(b)   The fourth paragraph was the one upon which the action of the trial court was chiefly rested, and if it presents a complete defense to the cause of action set out in the petition, the judgment must be affirmed. There is no precedent in this jurisdiction upon which the rights of the parties having such relations to each other, as those in this record, can be appealed to for our guidance. There has been no adjudication, so far as our research has extended, in this jurisdiction, involving the right of an employe of a charitable institution, which is not conducted by the state, county or municipality, to recover damages against it for a personal injury incurred through the negligence of the officers, servants, agents and employes of the institution. It seems that there would be no other way for a claim to be made against such an institution, since its affairs must all be conducted by its servants and agents, although there are some cases which hold that there are certain non-delegable duties which the corporation in itself must see to, but it is impossible to see how such a corporation could act, except through its managers, servants and employes. In Cook v. Norton Memorial Infirmary, 180 Ky. 330, recently decided, a patient in that institution was denied damages for torts suffered from the negligence of the attendants and servants. The institution was similar to the appellee here, in that it was conducted by private persons, and was in no sense a governmental agency, but the complainant was a patient and not an employe, and the courts in all the jurisdictions in this country, except possibly two or three, deny damages to a patient for torts suffered in such an institution, on account of the negligence of its servants. In Williamson v. Louisville Industrial School of Reform, 95 Ky. 251, an inmate, who was a beneficiary of the insti-

tution, sought damages against it, because of a tort inflicted by the malicious act of an employe, but the right was denied upon the ground that the institution was supported by taxation and state aid, and was an agency of the government for the reformation of delinquent children. In Ketterer's Admr. v. State Board of Control, et al., 131 Ky. 287, the action was for maltreatment of an inmate, resulting in his death, by the servants of the institution. The institution was the Eastern Kentucky Asylum for the Insane, which is conducted, maintained and controlled by the state government. The recovery was denied, upon the ground that the policy of the law made both the state and the officials of such institution immune from damages, on account of malicious or negligent acts of the employes. The officials here referred to were members of the State Board of Control, and the superintendent of the asylum. The reason truly being that the institution was an arm of the government and performing a governmental duty. In Leavell v. Western Kentucky Asylum for the Insane, 122 Ky. 213, an employe sued the institution and sought damages because of personal injury suffered on account of the act of an irresponsible lunatic, in starting certain machinery in motion in the laundry of the institution. The lunatic was an inmate and the servants in charge of the asylum permitted the lunatic to work in the laundry. The claim of damages was denied upon the grounds that the asylum was a governmental agency, the rule of *respondeat superior* did not apply, and, also, that the funds of the institution were held upon trust which could not be violated. The first of the grounds was, however, amply sufficient, and there, doubtless, it should have been rested. In I. C. R. R. Co. v. Buchanan, 126 Ky. 288, it was held that where a railroad company set up a hospital for its employes, which was supported by certain contributions of the employes, the company having the selection of the surgeons, but deriving no pecuniary profits from the hospital, the company was not responsible to an employe who was a patient therein for the negligent conduct of the surgeon, but was responsible for the exercise of due care in their selection. It is apprehended, however, that the relationship of the railroad company to its employes, and the fact that the patients were limited to the employes of the company may have been the ground upon which

the limited liability was rested, and the further ground that a railroad company is not a charity. The cited cases of Williamson v. Louisville Industrial School of Reform, *supra*; Ketterer's Admr. v. State Board of Control, et al., *supra*; Leavell v. Western Kentucky Asylum, etc., *supra,* and I. C. R. R. Co. v. Buchanan, *supra,* shed but a dim light upon the question involved here, and the facts of the three first named, and the result in each is but in line with the opinions of courts in many jurisdictions, and where the institutions sought to be held responsible were established and operated by either the state, county or a municipal government, and in such instances it has been held that no liability existed in favor of any one, stranger, patient or employe, against the institution itself for the injuries caused by the negligence of the institution or its servants. Benton v. City Hospital, 140 Mass. 13; Farigan v. Peaver, 193 Mass. 147; Downes v. Harper Hospital, 101 Mich. 555; Maia v. Eastern State Hospital, 97 Va. 507; Richmond v. Long, 94 Amer. Dec. 461; Murtaugh v. St. Louis, 44 Mo. 479; Ogg v. Lansing, Yuba County, 21 Cal. 113; Maximillian v. N. Y., 62 N. Y. —. The foregoing cases, as well as those in our own jurisdiction, which deal with the liability of agencies of government for torts, should not properly be considered upon the ground that they are charities, but the exemption from liability is more properly placed upon the ground that they are agencies of the state or municipality, and not necessarily upon any of the principles applying to charities, and in reference to I. C. R. R. Co. v. Buchanan, *supra,* it is already suggested that a railroad company is not a charity

There is no contention that the appellee is not a pure charity, but, it is privately controlled and is not in any sense a governmental agency. The government contributes nothing to its support and maintenance, except to exempt it from taxation, but it is at all times subject to the visitation of the legislature. Such charities created for the purpose of and operating hospitals are most generally held immune from liabilities in the various jurisdictions for damages for tortious acts of their servants and employes, as well as acts which may be more properly attributed to the charity itself, if such can be differentiated from the acts of the corporation through its employes. The non-liability is placed upon various

grounds, and the decisions in regard to same are contradictory beyond those applying to almost any other subject. The general non-liability of a charity is chiefly rested in different jurisdictions, which hold it to be immune from damages, upon (1) public policy; (2) their funds are held in trust and no diversion of them will be permitted; (3) they are agencies of government and entitled to the government's immunity; (4) the doctrine of *respondeat superior* does not apply; but, these it may be said, are not all the grounds upon which their non-liability is rested in some jurisdictions, but they are all which we deem necessary to be adverted to here. In some, however, they are held liable as any other private corporations, and under the same rules as apply to such. In certain ones a limited liability is imposed upon them, that is for torts to strangers, in others to employes, and doubtless in others to strangers and employes. In one or two states the courts hold them liable to a patient where the charity is a hospital, for damages arising from the negligence of the surgeons and attendants, but, in the other jurisdictions they are held not liable to a patient upon one or the other grounds stated above, and, also, upon the additional principle that the patient being a beneficiary of the trust, has upon entering the hospital, and accepting of treatment therefrom, impliedly waived any cause of action which he may have for the negligence of the surgeons or attendants. There is no doctrine upon which the non-liability of a private charitable corporation has been rested by any court, which has not been assailed and criticised by another court, although both of the courts may have arrived at the same result in decision. It is apparent that in this state of confusion of opinion in the various sister jurisdictions, and in the absence of any precedent of our own which will apply to the relationship of the parties upon this record, we are constrained to adopt a principle which can be applied to such conditions, that will be just to the parties, and reasonable in the light of a wise and safe public policy. Without any discussion of the soundness or unsoundness of the various principles upon which the courts in the different jurisdictions have acted in requiring or denying liability of charitable corporations for torts of the corporation, through its servants, we conclude that a charitable corporation organized and operating under sections 879, 880, 881 and 882, Kentucky Statutes, for the purpose of

conducting a hospital, and all of its funds are donated or devised to it by individuals for the purpose of operating a hospital for the treatment of the poor and needy sick, and are expended for that purpose, and that no profit or gain can accrue to any person from the operations of such institution, that it is not liable in damages for the negligent acts of its managers, servants or employes to any persons, whatsoever. The manager, servant or employe will be liable in damages to any person, whom his negligent act in the course of his employment may injure, but, the corporation itself is not liable. This principle is adopted, for the reason that the funds of such an institution are donated to it or devised to it in trust, that they will be expended for the charitable purpose of ministering to the poor and needy sick and no other, and such corporation is a trustee of such funds for such purposes, and it nor its trustees or officers receive any profit from its operation, and while it is not held that according to the ordinary principles governing the administration of a trust, these funds might not be diverted to the payment of damages incurred in its administration, they should not be diverted to any such purpose. The diversion of such funds in such a way would probably destroy the institution, and a wise public policy forbids such a result. It is to the interest of the public that such institutions be maintained and a principle which requires the interest of an individual to be subordinated to the good of the public is not a stranger to our legal principles. It probably might be said that it is a hard rule, which exempts such an institution from liability to a stranger, or to an employe, but it only works the same hardship upon a stranger or employe, as the principle which exempts a governmentally conducted charity from any liability to them, and the appellee is doing the same service as such an institution governmentally conducted might do. In several jurisdictions there is the same immunity from damages, for negligence of the charitable corporation or its agents and servants, in the course of their employment, which is extended to a charity conducted by the state or municipal authority, and the reason given for this rule is the one which we have held to be proper, and that is that the charity is, without any pecuniary compensation, performing a duty which the public owes to unfortunate humanity at large, and that it is a trust committed to the custodian

of such funds by the charitably disposed in aid of the poor and needy sick, and that it would be contrary to public policy to discourage the persons who contribute such funds, and to divert them to purposes which the donors did not have in contemplation. There is no absence of authority for these conclusions. While there is no precedent in this jurisdiction for holding a private charitable corporation immune from damages for injuries suffered by an employe, because of the negligence of a manager or servant of the institution, in some of the opinions of this court, views to that effect have been expressed, and which if not binding are at least persuasive. The opinion seems to have been entertained that the same public policy which rendered a governmental charity immune from damages, in favor of all classes of persons, could be invoked to save a private charity from like claims to the same extent. In University of Louisville against Hancock, 127 Ky. 564, the University sought to escape liability to a patient, upon the ground that it was a charity. Its claim to being a charity was denied, and in differentiating between its liability and that of a charity it was said:

"Eleemosynary institutions and other institutions of like character devoted to purely charitable uses, whether maintained by government, corporations or individuals, are exempt from such liability as was herein imposed upon appellant on the ground that they were mere instrumentalities brought into being to aid in the performance of governmental or public duty."

In 2, Sherman & Redfield on Negligence, section 331, the text says: "Corporate trustees instituted for the purpose of extending charitable relief, and administering funds contributed for that object from the public treasury or by private bounty, without the expectation or right, on their part, to receive compensation for their own benefit, having no capital stock and no provision for making dividends or profits, are public servants, and as such, having exercised due care in the selection of their servants, are not liable as a corporation for the negligence of such agents in the line of their employment resulting in an injury to another. Their funds are not to be diminished by any such casualties, it is held, unless a contrary legislative intention can be gathered from the statute." In Fordyce v. Woman's C. N. L. Association, 79 Ark. 550, it is said:

"With us public corporations and charities are, however, governed by the same rules as to the matter now under consideration, because the doctrine of *respondeat superior* does not apply either to charities or public corporations."

In Downes v. Harper Hospital, 101 Mich. 556, it is said:

"If in the proper execution of the trust a trustee or an employe commits an act of negligence, he may be held responsible for his negligent act; but the law jealously guards the charitable trust fund and does not permit it to be frittered away by the negligent acts of those employed in its execution. The trustees of this fund could not by their own direct act divert it from the purpose for which it was given, or for which the act of the legislature authorized the title to be vested in the defendant. It certainly follows that the fund can not be indirectly diverted by the tortious or negligent acts of the managers of the fund, or their employes, though such acts result in damage to an innocent beneficiary." Other cases which have approved more or less distinctly, the principle that public policy forbids the dissipation of the funds of charitable corporations in the payment of damages for personal injuries suffered by persons on account of the tort of the agents and servants of the corporations, or in any other manner than that authorized by the trust under which they were given, are Duncan v. Nebraska Sanitarium Association, 92 Neb. 162; Taylor v. Protestant Hospital Association, 85 Ohio St. 90; Jensen v. Main Eye & Ear Infirmary, 107 Me. 408; Vermillion v. Woman's College, 104 S. C. 197; Weston's Hospital of, etc., 107 S. E. 785; Magenson v. Swedish Hospital, 99 Wash, 399; Morrison v. Henke, 165 Wis. 166; Lindler v. Columbia Hospital, 98 S. C. 25; Whittaker v. St. Luke's Hospital, 117 S. W. 1187 (Mo.). In Cook v. Norton Memorial Infirmary, *supra,* we held that the doctrine of public policy would deny a patient, in a charity hospital, damages against it for negligence of the attendants, and also, that the fact that the funds of the hospital were a trust fund would deny the patient damages, but in some jurisdictions it is held that the fact that the funds are a trust would not avail to prevent the recovery of damages by any persons, except beneficiaries of the trust, as in the Cook case the patient was, but the doctrine that it is contrary to a wise public policy to make the charitable insti-

tution liable for the torts of any of the agents of such a corporation, necessarily puts it upon the same plane of immunity, as if it was an agency of the government. The government incorporates these institutions, and in the statute which authorizes their creation, retains the right of legislative visitation, and in section 880, Kentucky Statutes, these institutions are empowered, among other things:

"And to receive and hold such property, real and personal, whether obtained by charities, gift or devise, as may be necessary to carry on or promote the objects of the corporation, society or association, and may sell or dispose of such property at pleasure, unless the property has been received as a gift or devise for some special purpose, and if so received, it shall be used and applied only for such purpose." Hence, it would seem that the legislative intention is that funds donated specially for the purely charitable uses of the appellee could not be diverted to any other purpose, and the public policy denying the right to squander them in damages thus has legislative sanction.

It is, however, insisted that the appellant having been unlawfully employed in that he was under the age of sixteen years, and set to the operation of an elevator, contrary to the provisions of section 331a, Kentucky Statutes, that the latter statute is declaratory of a public policy, which is more potent than the one which provides that a charitable corporation shall be immune from liability for damages for the tortious acts of its servants and agents, and for that reason the institution itself becomes liable for injuries sustained in such unlawful employment. The statute itself, however, only imposes a penalty upon the one violating it by the employment of a youth, under the age of sixteen years, in the operation of an elevator. The courts have construed it to deprive the employer of any defense such as contributory negligence and assumed risk, when damages are sought against him for an injury to such servant, incurred in such an unlawful employment, and have made the fact of his unlawful employment a negligence sufficient to sustain a recovery. The statute nor the courts have made any employer liable who was not theretofore liable to a servant for negligent injury. A charitable corporation was not liable before the enactment of the statute for a negligent injury inflicted by a manager, servant or em-

ploye, upon another employe or other person, and the statute has not changed the liability in that respect. Sections 880 and 331a, *supra,* construed together, both of which now declare the public policy of the state, there is no repugnance found between them. The one renders the funds of a corporation donated to it for the purpose of doing charity to the poor and needy sick, immune from dissipation in damage suits, because it requires them to be expended for the purpose for which they were donated, and no other, while the other subjects the employer to a fine for employing a youth in a hazardous occupation. The employer, which a youth under the prohibited age and injured in a prohibited occupation, could have sued, for the negligent injury before the enactment of section 331a, *supra,* was the servant of a charitable corporation, who did him the injury and not the corporation, and against such individual he yet has a cause of action, governed by the principles which the courts have applied to a violation of that statute and under that statute against the person who employed him, and the servants of a charitable corporation, who set a youth to an unlawful occupation, may have imposed upon them the penal consequences of the statute, in addition to the civil liabilities incurred. A sufficient reason for this conclusion is that the rule of *respondeat superior* does not apply to a charitable corporation itself, and has been so held in many jurisdictions, because the servants of such an institution are the servants of the public, and not of a master, who is engaged in seeking gain for himself and for that reason an injured person must content himself with his action against the one who does him an injury. Many cases in different jurisdictions have held that the doctrine of *respondeat superior* does not apply to a charitable corporation, among which may be cited: Union P. R. C. v. Artist, 23 L. R. A. 581; Pierce v. Union P. R. Co., 66 Fed. 44; Brown v. La Societe Francaise, 138 Cal. 475; Hearns v. Waterbury Hospital, 66 Conn. 98; Parks v. North Western University, 218 Ill. 381; Thornton v. Franklin Square House, 200 Mass. 465; Taylor v. Protestant Hospital Asso., *supra*; Morrison, v. Henke, 165 Wis. 166. In our own jurisdiction, in the case of Leavell v. Western Kentucky Asylum for the Insane, *supra,* it was there distinctly held that the rule of *respondeat superior* did not apply to a charitable institution, but in that case the in-

stitution was an agency of the government, but, as quoted from the case of Fordyce v. Woman's C. N. L. Asso. *supra*, it was held, and we think properly so, that charities and governmental agencies are upon the same plane in that regard.

The judgment is therefore affirmed.

The whole court sitting, Judge Thomas dissenting.

### Dissenting Opinion by Judge Thomas.

The writer, with some misgivings, consented to and wrote the opinion in the case of Cook, Admr. v. John N. Norton Memorial Infirmary, 180 Ky. 331, which was an action to recover damages for the death of a patient alleged to have been produced by the negligence of the institution, which was a private charity. His investigations since then, particularly in the instant case, have not served to remove the doubts then entertained concerning the soundness of the reasons given by the various courts, including this one, as a basis for immunity from liability of such institutions in actions against them, seeking the recovery of damages for personal injuries, though not resulting in death. If death follows it is difficult to see why the provisions of section 241 of the Constitution would not afford an action for damages against the corporation which neither the legislature nor the courts could withhold. In the Cook case the applicability of the section of the Constitution referred to was neither raised nor discussed by either counsel in the case, and, as the writer remembers, it was not mentioned during its consideration by this court. Out of respect for, and adhering to, the doctrine of *stare decisis,* I am disposed to follow the rule of this court in granting immunity in such cases in actions for damages by *patients* of the institutions where only personal injury and not death occurred, though the annotation to the case of Roosen v. Peter Bent Brigham Hospital, 14 A. L. R., beginning on page 572, conclusively shows that the disposition of the courts is to recede from any of the grounds upon which the immunity has heretofore been placed, because none of them find sufficient support in logic or reason. Many of the cases in that annotation attack the "trust fund" doctrine, even as applicable to patients, upon the ground that no one has a legal right to create a trust and invest the trustee with immunity from the consequences

of his or its negligence.  The reasoning is that the courts hold the contributor to the trust liable for failure to exercise ordinary care when he assumes the role of a good Samaritan without pay, as is illustrated in the case of Gates v. C. & O. Ry. Co., 185 Ky. 24, and cases referred to therein.  Equally fallacious is the rule which bottoms the non-liability upon the ground that the institution is performing a public function and to that extent relieves the state of some of its burdens.  All the cases adopting that ground concede that if it was an individual operating the charity he could not claim the immunity on that or any other ground, although he would be performing and discharging with his own means a public function the same as a charitable institution does with its funds.  Moreover if the immunity is allowed upon that ground, to institutions which care for the diseased and afflicted, it should also apply to any other institution performing an equally important public function, and immunity would be thus extended to all colleges, universities and institutions of learning which are engaged in carrying out the declared public policy of the state to educate and train its youth for better citizenship.  Again, if the "trust fund" theory is sound, as enhancing and protecting a sound public policy, it is difficult to perceive why a municipality could through its negligence be made to appropriate any part of its trust fund created entirely by donations of its citizens in the form of taxes, and this too, though the corporation be indebted to the limit allowed by the Constitution, as is held in the cases of Hopkins County v. St. Bernard Coal Co., 114 Ky. 153, and Menar v. Sanders, 169 Ky. 285.

In my humble opinion the only feasible ground upon which the immunity extended to such institutions for negligence towards patients (not resulting in death), is that of "implied waiver" by the patient, individually, or by the one who acts for him, as his agent, when he enters the institution; but even this is doubtful, and it would seem from a thorough study of the question that the whole doctrine of such immunity is based upon sentimental grounds rather than reasonable and logical ones.  But, as said at the beginning of this dissent, and for the reasons stated, I am willing to not disturb the rule heretofore adopted by this court in allowing the immunity in actions seeking recovery by only injured patients.

But this case, however, does not involve the right to a recovery for an injury to a patient but to a servant, and that, too, for negligence growing out of the violation of a penal statute enacted in furtherance of a wholesome public policy. The opinion not only extends the immunity, allowed in actions by patients of the corporation, to actions brought by its injured servant, but likewise extends it to actions by strangers as well, and even excuses the institution from prosecution under, and from payment of the penalties provided by, the statute which it is charged to have violated, for it says that the persons who employ the servant and "who set a youth to an unlawful occupation, may have imposed upon them the penal consequences of the statute, in addition to the civil liabilities incurred," which would seem to imply that in as much as the institution was not liable civilly, though its individual agents or managers were, it would neither be liable criminally, because only the same managers and servants would incur such liability; and all such protection is extended, according to the opinion, because of the trust nature of the fund with which the institution is operated, and perhaps also because it is performing a public function, both of which I have heretofore briefly referred to and which I will not further elaborate.

The opinion, however, in excusing the corporation for liability for injuries inflicted upon a servant is not only sustained by unsatisfactory reasoning but it runs counter to the great majority of the cases of other jurisdictions wherein the question was presented. The supreme courts of Michigan, Minnesota, New Hampshire, New York and Texas have each denied non-liability to such institutions in actions against them by servants, though some of them, if not all, extend immunity to actions by patients.

In the annotation, *supra*, beginning on page 581 of the volume referred to, will be found a list of the cases from those states dealing with the rights of a servant to maintain an action, and only two states in the Union, Massachusetts and Missouri, sustain the doctrine of the majority opinion in denying liability for injuries inflicted upon servants through the negligence of the institution. In only one reported case, so far as the writer has been able to ascertain, has the question arisen of the liability of such institutions to servants where the injury was in-

flicted as a result of the non-observance of the requirement of a statute, and in it the court held the institution liable, the case being McInery v. St. Luke's Hospital Association, 122 Minn. 10, 46 L. R. A. (N. S.) 548. So that the majority opinion is not only against the great majority of opinions wherein the rights of a servant were involved, but it is directly opposed to the only case wherein the concrete question here presented was involved.

It might be said that the Child Labor Law does not by its terms attach civil liability for its non-observance, but only fixes a penalty therefor, yet, as we have seen, the majority opinion would excuse the defendant in this case from liability for the penalty fixed by the statute for the non-observance of its provisions. Furthermore, this and other courts have uniformly held that an action for civil liability would arise upon the violation of the terms of such statutes resulting in injury to others. In other words, that at least a presumption of negligence follows such violations, and it is not unreasonable to say that the interpretations of penal statutes thus given become a part of them quite as much so as if the interpretation had been written in them. Bishop on Non-Contract Law, sections 71, 279, 355 and 424; Bishop on Criminal Law, vol. 1, section 264, and 1 Corpus Juris, 954-957, inclusive.

An illustrative case from this court is Louisville Trust Co. v. Morgan, Admr., 180 Ky. 609, where the operators of the Seventh Avenue Hotel in Louisville had failed to comply with section 2095a of the Kentucky Statutes, which is an act passed by the legislature at its 1914 session and requires under conditions therein stated that the character of buildings therein named shall be provided with certain described fire escapes on the outside of the building, and that other enumerated precautionary measures shall be taken to prevent damages and injury to the inmates by fire. A fire occurred and one of the guests of the hotel lost his life, and his administrator sued the hotel company to recover damages therefor, which action this court upheld. Other cases bearing upon the same point are, Casperson v. Michaels, 142 Ky. 314; Sanitary Laundry Co. v. Adams, 183 Ky. 29, and others therein referred to. In the last two cases the negligence consisted in violations of the child labor statute, the same one here involved. But, our statute (section 466) puts the matter at rest. It says: "A person injured by the vio-

lation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty of forfeiture for such violation be thereby imposed.'' Cases in which the section was applied by this court are L. & N. Ry. Co. v. Haggard, 161 Ky. 317; L. & N. Ry. Co. v. Cooper 164 Ky. 489, and Simmons v. Vaughan and Blackwell, 165 Ky. 167. That section, therefore, became a part of the Child Labor Law upon its enactment as much so as if it had been incorporated therein and created the right to a civil action for damages resulting from its non-observance the same as fixing a penalty therefor.

But, I will not further elaborate this dissenting opinion, having satisfied myself with briefly stating my position. I cannot refrain, however, from saying before closing that if the doctrine of the majority opinion is to be as sweepingly applied as its terms would allow, then this court has created an artificial individual who, like the King in ancient tyrannical days, can do no wrong. It has set that creature above and beyond the operation of the highest public policy of the state, *i. e.,* an enactment of the legislature, which, to say the least of it, to my mind, can be sustained by no character or kind of reasoning. Of course, the statements in the opinion relating to the non-liability of corporations engaged in private charity work in actions based on their negligence toward strangers, and their immunity from penalties for non-observance of a statute applicable to all alike, is *obiter,* but since the reasoning of the opinion is as applicable to the two cases included in the *dictum* as it is to cases disposed of, the *dictum* will most likely be adopted when the question is presented.

I deem it pertinent to incorporate an excerpt from the annotation, *supra,* found on page 585 of the volume referred to, saying: ''One consideration seems to have been overlooked by the cases in this and the preceding subdivision (liability to strangers and to servants). The basis of charity is, above everything else, voluntary benevolence. When a stranger or an employe is maimed or killed by the operations of the charity, and compensation is denied him, or those dependent on him, in order to save the funds of the charity for charitable work, he and those dependent on him, are compelled to contribute his life and their support against their will to charitable purposes, which makes a farce of the whole charitable idea,

and no decision founded upon such a principle can be regarded as sound under modern conceptions of justice.'' This embodies the final conclusion of the very able editorial staff of that most excellent publication.

For the reasons thus briefly stated, and others which might have been, I respectfully dissent from the opinion of the court.