PORTO RICO GAS & COKE CO. v. FRANK RULLAN & ASSOCIATES, Inc., et al.

FRANK RULLAN & ASSOCIATES, Inc. v. UNITED STATES.

UNITED STATES v. FOARD et al.

Nos. 4515–4517.

United States Court of Appeals
First Circuit.

May 14, 1951.

Rehearing Denied June 25, 1951.

398

Rafael O. Fernandez, San Juan, P. R. (Charles R. Hartzell, Daniel F. Kelley, Jr., and Wilson P. Colberg, San Juan, P. R., on the brief), for Porto Rico Gas & Coke Co.

Juan E. Geigel, San Juan, P. R. (Guillermo Silva, San Juan, P. R., on the brief), for Frank Rullan & Associates, Inc. and others.

Newell A. Clapp, Acting Asst. Atty. Gen., Francisco Ponsa Feliu, Acting U. S. Atty. San Juan, P. R. and Paul A. Sweeney and Benjamin Forman, Attys., Washington, D. C., for United States.

E. T. Fiddler, Jose G. Gonzales, Tomas I. Nido and Fernando Fornaris, Jr., San Juan, P. R., for Fred T. Foard.

Before MARIS (sitting by special assignment), WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

Fred T. Foard, M. D. the plaintiff-appellee in No. 4517, has spent his entire professional life as an officer of the United States Public Health Service. On April 3, 1948, he held the rank of Colonel and was serving as the Director of the 6th District consisting of Puerto Rico and the Virgin Islands. As Director he had general supervisory charge of his District and was supplied by the United States with a dwelling house on the grounds of the United States Marine Hospital in San Juan. This house, known as Quarters No. 1, Building No. 2, or M. O. C. quarters, was owned and had been built by the United States, and it had been assigned to Dr. Foard by the appropriate governmental authorities. In consequence he did not draw any compensation or allowance for quarters which would have been paid to him in addition to his salary if quarters had not been assigned to him.

On the above date of April 3, 1948, a violent explosion of illuminating gas occurred in Dr. Foard's quarters as a result of which the building was wrecked, Mrs. Foard was killed outright, Dr. Foard was injured, and substantial damage was done to his household furniture and other personal effects. There is no possible dispute as to these basic underlying facts.

Approximately three months after the explosion Dr. Foard filed a complaint in the court below against the United States under Part 3, § 410(a) of the Federal Tort Claims Act, 60 Stat. 843, now Title 28 U.S. C. § 1346(b), in which, as amended, he demanded "judgment against defendant in the sum of $30,000.00 for the loss of his wife, her companionship and services, for the mental anguish and pain caused him by the death of his wife, and the expenses of her funeral, and judgment against defendant also in the sum of $5,000.00 for the loss of his household furniture, silverware, wardrobe and miscellaneous items, together with costs of this proceeding."

The United States answered denying liability, and then, complying with the provisions of Rule 14, Fed.Rules Civ.Proc. 28 U.S.C.A., brought in Frank Rullan & Associates, Inc., the appellant in No. 4516, as a third-party defendant. In its third-party complaint, the United States alleged in substance that Rullan had entered into a contract with the United States in September, 1945 "to do some repair work" on the buildings in the Marine Hospital compound, including Quarters No. 1, Building No. 2, and the termination of its work in July, 1946, and then asserted that "the sole, direct and proximate cause of the explosion" was (a) the negligence of Rullan and its agents and servants in making the repairs called for in the contract and (b) Rullan's failure "to perform some of the repairs and to install some of the equipment required under the contract." Rullan answered in due course admitting the contract and the termination of its work thereunder as alleged, but denying its negligence and its breach of contract, and also setting up a number of other defenses which do not require enumeration at this point.

Rullan in its turn, also under Rule 14, supra, then brought in Porto Rico Gas & Coke Company, the appellant in No. 4515, as another third-party defendant. In this second third-party complaint Rullan alleged in substance that it had contracted with the Gas Company "for the performance of a certain part in the work called for" in its prime contract with the United States, that the Gas Company had entered upon and also terminated its work in January, 1946, and that "the sole, direct and proximate cause of the explosion" was, (a) the negligent failure of the Gas Company, its agents

and employees, properly to do the work it had contracted to do, and (b) the Gas Company's breach of contract by failure "to install some of the equipment required" under its contract with Rullan. The Gas Company answered denying that it had ever contracted with Rullan for the performance of any part of the latter's contract with the United States. It conceded, however, that at Rullan's request it had provided the labor required to install five expansion joints, or swing joints,[1] in gas lines on the Marine Hospital grounds, but it insisted specifically "that in the installation of said joints it only furnished the labor, and that Frank Rullan & Associates furnished the materials and specified and pointed out the locations in which such joints were to be installed, and that the same were installed in accordance with such instructions." Wherefore it demanded a judgment relieving it of all liability in the premises.

The cases came to trial together on the merits in the court below sitting without a jury on these pleadings.

The following additional facts are either undisputed, or else were found by the court below on adequate, although sometimes conflicting, evidence and hence cannot be challenged on appeal. Rule 52(a), F.R. C.P.

Because of a general settlement of the land upon which the United States Marine Hospital in San Juan stood, breaks occurred prior to 1945 in the underground gas and water pipes in the hospital compound. In consequence an investigation of the situation was made by appropriate United States officials, and this investigation resulted in a contract between the United States and Rullan in September, 1945, covering, among several other items, the installation by the latter of eight swing joints in pipes leading from the gas main to various buildings in the area. The location of the joints called for in the contract was shown on a plan prepared by the United States in connection therewith, one of

which was in the line leading into the M. O. C. quarters later occupied by Dr. Foard. Rullan promptly entered upon the performance of its contract, and late in December 1945 or early in January 1946, it in turn entered into a contract with the Gas Company whereby Rullan was to supply the materials (nipples and elbows) required, and the Gas Company was to install the swing joints called for in Rullan's contract with the United States and shown on the plan prepared by the latter referred to above. Although the work specified in the prime contract was performed under the supervision of a government inspector, neither the Gas Company nor Rullan installed any swing joint in the line leading to the M. O. C. quarters which later blew up. The other swing joints called for in the contract, however, apparently were installed.

The court below specifically found that because of the settling of the ground outside Dr. Foard's quarters the gas pipe leading into those quarters from the main became bent and strained to such an extent that a leak developed somewhere in the line in the basement under the house with the consequence that "a large quantity of gas accumulated underneath the said building" which "upon being ignited resulted in the above mentioned explosion." Furthermore it found that "swing joints or gas loops are safety devices or appliances which effectively and efficiently prevent the breakage of pipe lines as a result of ground settlements", and that had there been such a device in the line leading to Dr. Foard's quarters the line would not have been strained, bent and broken. Wherefore it concluded "That the sole, direct and proximate cause of the explosion was the accumulation and ignition of fluid gas underneath and within the aforementioned premises caused by a leakage of gas due to the absence of a swing joint or gas loop in the gas pipe feeding the plaintiff's quarters."

The court did not make any finding with respect to what ignited the gas, but it found

1. A swing joint is a "U" shaped loop formed in a pipe by inserting elbows and nipples therein the result of which is to give the pipe flexibility and so prevent its breaking when forced out of alignment, as by the settlement of the ground in which it is buried.

"That there was no negligence on the part of the deceased or of the plaintiff herein."

On the basis of the foregoing findings and conclusions the court below determined that the government inspector had been negligent in failing to see to it that a gas loop was installed in the line to the M. O. C. quarters as the prime contract required, that Rullan had broken its contract with the United States, and that the Gas Company had broken its contract with Rullan. In consequence, assessing the plaintiff's entire damages at $18,900, it entered the judgment appealed from in which it first awarded the plaintiff the full amount of his damages against the United States, second awarded the United States the same amount against Rullan, and third awarded Rullan a like amount against the Gas Company.

The sections of the Civil Code of Puerto Rico (1930 ed.) presently material are quoted in full in the margin [2] with the particularly pertinent parts italicized.

The United States as appellant in No. 4517 makes but one contention. Pointing to the provision of the Federal Tort Claims Act which imposes liability only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred", it says that under local law a private person in the position of the United States would not be liable under the circumstances here disclosed. The reason for this is said

to be that it is a settled principle of local law that a hospital is not liable for the torts of its employees under the fourth paragraph of § 1803 quoted in footnote 2 in which liability is imposed on the owners or directors of an establishment or enterprise for damages caused by employees unless the hospital is a commercial establishment or enterprise, and that the plaintiff has failed to sustain its burden of proving the Marine Hospital to be such an establishment or enterprise for the reason that, at the most, all the record shows is that only occasionally were a few special patients admitted who paid for their treatment. Several answers to this contention suggest themselves, but we content ourselves with one. This is that the Supreme Court of Puerto Rico, in a case translated since the government's brief was prepared, specifically overruled former decisions and held charitable enterprises or establishments liable under § 1803 supra, for the torts of their agents or servants to the same extent as non-charitable ones.

It is true that in 1928 the Supreme Court of Puerto Rico in Candal v. Soc. Esp. de Auxilio Mutuo, 37 P.R.R. 811, held that a hospital organized primarily for dispensing charity rather than for reaping profits could not be held liable under § 1803 paragraph four, supra, for damages caused by negligence in the diagnosis and treatment of disease by members of its medical and surgical staff, and that mere proof that in a single instance a patient, in that case the

**2.** Section 1802—*A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done.*

Section 1803—*The obligation imposed by the preceding section is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.*

The father, and on his death or incapacity the mother, is liable for the damages caused by the minors who live with them.

Guardians are liable for the damages caused by minors or incapacitated persons who are under their authority and live with them.

*Owners or directors of an establishment or enterprise are equally liable for the damages caused by their employees in the* *service of the branches in which the latter may be employed or on account of their duties.*

The State is liable in this sense when it acts through a special agent, but not when the damage should have been caused by the official to whom properly it pertained to do the act performed, in which case the provisions of the preceding section shall be applicable.

Finally, masters or directors of arts and trades are liable for the damages caused by their pupils or apprentices while they are under their custody.

*The liability referred to in this section shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid the damage.*

plaintiff, had been charged a moderate rate for a room and a reasonable price for x-rays "is not enough to convert an eleemosynary institution into a commercial 'establishment or enterprise,'" Id. 824. Fifteen years later, however, the Court in Carrasquillo v. American Missionary Association, 61 P.R.R. 837 seized the opportunity to fully reexamine the rule of the Candal case but it apparently did so only for the purpose of pointing out its waning popularity in the United States, for the Court distinguished the Candal case on the facts. Noting that in the Candal case it did not appear that anyone other than the plaintiff had ever paid for hospitalization, it said that the case before it was easily distinguishable because it appeared therein that patients in the hospital involved "were charged in accordance with their economic ability and that the plaintiff paid $40.00 for the first ten days of his wife's hospitalization." Id. 842. Hence it concluded that the hospital it was considering in the Carrasquillo case was not a charitable enterprise or establishment within the definition of the Candal case.

In 1948, however, the Supreme Court of Puerto Rico took occasion expressly to overrule the Candal case. In Tavarez v. San Juan Lodge, 68 P.R.R. 681, a case holding a lodge of the Benevolent Protective Order of Elks liable in tort to an invitee for damages sustained by the latter when in the darkness she stepped into an unguarded and unlighted hole on the lodge's premises, the Court, noting the distinction of the Candal case in Carrasquillo v. American Missionary Association, supra, at page 689 said: "although substantially the same distinction could be made herein, we prefer to clearly state at this time that the case of Candal, regarding the specific question under discussion, should be considered now expressly overruled." This clear and candid statement leaves no room for doubt in our minds that under Puerto Rican law today a charitable enterprise or establishment is no longer immune from liability in tort under § 1803 for damages caused by its employees.

The contentions advanced by the Gas Company and Rullan as appellants in Nos. 4515 and 4516, respectively, can be considered jointly, for Rullan has specifically adopted the Gas Company's brief as appellant in so far as it is applicable.

The first of these contentions also rests upon the provisions of the Federal Tort Claims Act imposing liability on the United States only under circumstances where it, if a private person, "would be liable to the claimant in accordance with the law of the place where the act or omission occurred." They say that the law of Puerto Rico draws a much sharper and clearer line of distinction between actions *ex delicto* and actions *ex contractu* than the Common Law, and that it is a well established rule of Puerto Rican law that §§ 1802 and 1803 of the Civil Code quoted above are "applicable only when the negligent act or omission complained of takes place unconnected with and completely independent of, any existing contractual obligation between the injured party and the party causing the injury." Therefore they contend that since the United States supplied Dr. Foard with quarters as in incident of his contract of employment as a Public Health Service Official, his cause of action under the law of Puerto Rico cannot be in tort, but can only be in contract for breach of the implied obligation to supply him with a reasonably safe place in which to live. Wherefore it is argued that the Federal Tort Claims Act is inapplicable altogether, and that Dr. Foard, if he has any cause of action at all, must sue the United States in contract in the Court of Claims, for under the Tucker Act, so called, now Title 28, U.S.C. § 1346(a)(2), the district courts have no jurisdiction over such actions for the amount here involved.

Several earlier cases seem clearly to show that the appellants Rullan and the Gas Company are mistaken as to the principle of Puerto Rican law upon which they rest this contention. Thus in Mejias v. Lopez, 51 P.R.R. 20 (1937), the Supreme Court of Puerto Rico reversed the insular District Court and held that in spite of their contractual relationship a conditional vendee of a radio might recover against her conditional vendor under §§ 1802 and 1803, supra, for mental anguish, and physical and

nervous prostration resulting from humiliation, caused her by the violence and attendant publicity with which the seller's agents entered her premises and repossessed the radio. The Supreme Court of Puerto Rico said: "Sometimes it is difficult to distinguish between an action *ex contractu* and an action *ex delicto,* but generally speaking it has been well established that the former is for the breach of a duty arising out of a contract either express or implied, and the latter is for the breach of a duty imposed by law, which ordinarily arises out of a negligent or wrongful act unconnected with any contract between the parties, but may arise either independently of any contract or by virtue of certain contracual relations, as is alleged to have occurred in the case at bar." Moreover in Torres v. Fernandez, 56 P.R.R. 459 (1940) the same Court, in an action by a tenant for damages suffered in a fall due to the breaking of a defective tread in a stairway on the leased premises, while sustaining the insular District Court's ruling that the tenant had not made out a case under the provisions of the Code covering a landlord's obligations to his tenants, reversed the District Court's other conclusion that recovery could not be had under § 1802 because of the contractual relationship of the parties. Quoting Louisiana cases with approval the Supreme Court said: " 'The existence of contractual relations between two parties is not bar [sic.] to a right of action for tort committed pending the contract, and connected with it, though the contract may more or less affect the rights and obligations of the parties.' " Furthermore, there are numerous cases in the reports sanctioning recovery in tort by plaintiffs having some sort of a contractual relationship with the defendant, as a passenger on a trolly car (Diaz v. San Juan Light and Transit Co.,[3] 17 P.R.R. 64), and the cases involving enterprises or establishments cited earlier in this opinion, in which no mention is made of any impediment to recovery due to a contractual relationship between the parties.

However, the recent case of Arroyo v. Caldas, 68 P.R.R. 639 (1948) casts some doubt upon the authority of the above cases, for in that case, in a suit by an invitee of a tenant against the landlord for injuries resulting from a fall caused by a defect in the premises, the court said that § 1803 of the Civil Code was "inapposite" because it "is a sequel to § 1802 which is confined to the fault or negligence without there existing a prior obligation or a contract. * * * In such cases that is, under § 1802, no prior obligation exists between the person causing the damage and the one receiving it. * * * When the prior obligation exists, § 1054 [4] of the Civil Code applies."

■ But the foregoing is at the most only a dictum in which the cases cited last above are not discussed or even mentioned, and there is no detailed analysis of the question. It does not seem to us that the Supreme Court of Puerto Rico could have intended in so perfunctory and off hand a manner to overrule *sub silentio* the carefully considered cases cited above, and to establish a new rule squarely in conflict with them. We therefore adhere to the rule of the earlier cases, and from this it follows that we must reject this contention of the appellants Rullan and Gas Company.

These appellants' next contention is that the United States cannot be held liable to the plaintiff for the reason that it clearly appears that the United States exercised all the diligence of a good father of a family to avoid the damage, and hence is exonerated under the provision of the last paragraph of § 1803 of the Civil Code which provides that "The liability referred to in this section shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid the damage."

3. In this case the Supreme Court of Puerto Rico relied heavily upon a decision of the Supreme Court of Spain.

4. "Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby."

It is apparent at a glance that the responsibility in certain situations for the acts of others imposed by § 1803 of the Civil Code is quite different from the vicarious liability imposed under the common-law doctrine of *respondeat superior*. And nowhere is the difference more obvious than in the last paragraph of the section quoted above. The first impression from reading that paragraph in connection with paragraph four of the same section is that an employer is absolved from liability for the acts of his employees if he can show that he used the diligence of a good father of a family in selecting his employees. But years ago it was firmly established that this is not so in Maldonado v. Porto Rico Drug Co., 31 P.R.R. 709, 726 (1923) wherein it is said that "It is not sufficient to engage the services of competent employees", it being suggested that if the rule were otherwise any action brought under the section "could easily be made illusory." Moreover, in Rodriguez v. National Cash Register Co., 35 P.R.R. 606, 608 (1926) the court fully reconsidered its ruling in the Maldonado case, and with ample citation of supporting authorities said: "The liability of an employer does not end with his having exercised all the diligence of a good father of a family in selecting his employees. It must be further shown as an affirmative defense that he exercised the care and vigilance which ought to have been employed in order to avoid the injury." Little further light has been shed upon the meaning of the paragraph by the few cases we have been able to discover construing it, for, strangely enough, employers do not seem to raise it often as a defense.

It does appear clearly, however, that under Puerto Rican law the defense given by the paragraph, whatever its scope, is an affirmative one which must be alleged and proved by the person raising it. This appears from the above quotation from Rodriguez v. National Cash Register Co., supra, and the statement is supported by prior cases. Truyol & Co. v. West India Oil Co., 26 P.R.R. 321, 329 (1918); Gonzalez v. Malgor Luina & Co., 29 P.R.R. 97, 99 (1921). And the defense was never alleged in any of the extensive pleadings in the instant case, nor was any evidence with respect to it introduced at the trial.

This omission is fatal to the appellants' contention, for liability under the Federal Tort Claims Act is made to depend upon the substantive law of the place where the act or omission occurred, and the rule as to the burden of proving whether the United States exercised the diligence of a good father of a family to avoid the damage can affect the outcome of the case to the same extent as the rule as to the burden of proving contributory negligence. The rule of Puerto Rican law under consideration is therefore a rule of substantive law under the principles expounded by this court in Sampson v. Channell, 1 Cir., 1940, 110 F.2d 754, 756, 128 A.L.R. 394. It is as much a rule of substantive law as the rule with respect to the burden of establishing contributory negligence. Van Wie v. United States, D.C. N.D.Iowa 1948, 77 F.Supp. 22, 40–41; Ira S. Bushey & Sons v. United States, 2d Cir., 1949, 172 F.2d 447, 448.

The remaining common contentions of Rullan and the Gas Company have to do with certain findings of fact made by the court below. They say that on the evidence neither the failure of the government inspector to see that the missing swing joint was installed, nor the absence of the swing joint itself, was the proximate cause of the explosion, that the proximate cause of the explosion was certain acts of the plaintiff himself, and that if there was any negligence on the part of the United States, the plaintiff was guilty of contributory negligence and cannot recover. As pointed out earlier in this opinion the District Court findings are directly contrary to these contentions. It will suffice for us to say that we find ample evidentiary support in the record for the findings made below, and hence that these findings cannot be challenged on appeal under Rule 52(a), F.R.C.P.

This disposes of Rullan's and the Gas Company's common contentions as appellants. And Rullan as appellant in No. 4516 makes no others. Apparently recognizing the validity of the District Court's findings to the effect that it was under contract with the United States to install a swing joint in

the gas pipe leading from the main to Dr. Foard's quarters, that no such joint was installed, and that the absence of the joint was the proximate cause of the explosion, it does not argue that the United States is not entitled to recover as damages for breach of contract the amount assessed as Dr. Foard's damages.

Now we turn to the Gas Company's contentions as appellant in No. 4515.

As already appears, the District Court did not find, as the Gas Company contends, that it merely contracted to furnish the hand labor required to install such gas loops as Rullan might point out as the ones required by the latter's contract with the United States. Instead it specifically found on adequate evidence that the Gas Company had agreed to install the eight specific gas loops called for in Rullan's contract with the United States and shown on the plan prepared by the latter in connection with the contract, one of which was in the line leading to the M. O. C. quarters. It is urged by the Gas Company, however, that this finding cannot stand as a matter of law for the reason that, in violation of the parol evidence rule, it constitutes an alteration or enlargement of the terms of a certain agreement written on a purchase slip signed by both Rullan and the Gas Company in which the latter's obligation is stated to be: "Hand labor installing loops or expansion joints at the Quarantine Station * * *."

Subject to exceptions not here material, § 387 of the Code of Civil Procedure of Puerto Rico provides: "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore, there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreements other than the contents of the writing * * *."

This provision was taken from the California code, and the Supreme Court of Puerto Rico in Sarria v. Alvarez & Co., 38 P.R.R. 813, 827 (1928) said that it "incarnates the principle of the rule of parol evidence". But the challenged finding does not do violence to the statute or to the parol evidence rule for the written memorandum does not purport to integrate the entire agreement of the parties. It merely specifies hand labor in installing expansion joints at the hospital. It does not state what expansion joints are to be installed, or even how many of them. Thus all the terms of the agreement were not reduced to writing, and hence it was open to the parties to fill in the gaps in their written agreement by extrinsic evidence. And there is testimony in the record by Rullan's principal officer who made the contract with the Gas Company, evidently given credence by the court below, that the Gas Company's complete agreement was to install eight gas loops at the Marine Hospital at the locations shown on the government's plan to which reference has been made, a copy of which was exhibited to, if not actually left with, the Gas Company when the memorandum was signed.

The Gas Company's next contention is that acceptance of its work by Rullan relieves it of any liability.

Since the contract between the Gas Company and Rullan was entered into in Puerto Rico, and its performance was to be in Puerto Rico; there can be no doubt that under well known principles of the law of conflict of laws this contention, like the preceeding one, must be resolved according to Puerto Rican law. And the applicable rule of local law was established many years ago by the Supreme Court of Puerto Rico in Miranda v. Fiol, 18 P.R.R. 65, 70 (1912) to be that acceptance by the owner of a house, even in writing, of work done by a contractor does not impair the owner's right to claim and obtain such damages from the contractor as may have been caused by latent defects or imperfections in the contractor's work. No doubt the rule is applicable with respect to work done outside the actual physical structure of a house or other building, as upon service pipes leading to or from it, and also to repairs as well as new construction. See Florensan & Trublard v. Guanica Central, 10 P.R.R. 187. Moreover, the defect here involved was a latent or hidden one, for the court below, although specifically requested, refused to find that the excavations

made by the Gas Company's laborers for the purpose of installing the loops were left unfilled to permit inspection. In view of the foregoing we see no occasion to consider this contention in more elaborate detail.

As a final point the Gas Company cites § 1056 of the Civil Code which provides: "Liability arising from negligence is also demandable in the fulfillment of all kinds of obligations; but it may be mitigated by the court, according to the case," and from this it argues that since Rullan as well as itself was found negligent, the damages ought to be allocated between them according to the degree of the negligence of each; and doing this, the court ought at the most only to assess nominal damages against the Gas Company. It is true that the court below found both Rullan and the Gas Company guilty of negligence as well as guilty of breach of contract. But the statutory provision cited above is clearly permissive rather than mandatory, and the court below did not see fit in its discretion to mitigate the Gas Company's liability. Whatever the scope of the power of the Supreme Court of Puerto Rico under its appellate procedure may be with respect mitigation of liability, it is clear that according to federal appellate procedure, and it is fundamental that the forum applies its own procedure, our power is only to reverse in case of abuse of discretion below. We find no abuse of discretion by the District Court; indeed, had we the power, we would also in our discretion refuse to mitigate the Gas Company's liability on the facts as found.

The judgment of the District Court is affirmed.