## Cook, Administrator, et al. v. John N. Norton Memorial Infirmary.

(Decided April 30, 1918.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

Charities—Private Institution Not Liable for Negligence of Nurse.—A private charitable institution founded by charitably-disposed persons, and having no funds except donations for such charitable purposes and what it may receive from patients who are able to pay, and having for its object the looking after, caring for, nursing and treating the sick and afflicted, and which has no stock or stockholders, and whose officers and agents receive no salaries or pay for their services, is not liable in an action by a patient, whether he be a pay or a free patient, for damages growing out of alleged negligence of its nurses, physicians or other servants engaged in carrying out the purposes of its organization.

S. A. ANDERSON for appellants.

RICHARDS & HARRIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is a suit brought by Joseph F. Cook, administrator of the estate of his deceased wife, Georgia A. Cook, seeking to recover damages suffered by her estate because of her death, which he alleges was the result of negligence on behalf of the defendant (appellee), John N. Norton Memorial Infirmary, its agents and servants.

It is alleged in the petition that the defendant is a corporation and has its infirmary in the city of Louisville; that the deceased was placed therein on October 21, 1915, for the purpose of undergoing an operation, which was performed the following day; that she remained there until the first day of November following when she, through the negligence and carelessness of the defendant, its nurses, agents and servants, fell from a window and sustained the injuries resulting in her death. She agreed to pay for the room which she occupied, and for the nursing and attention which she was to receive, the sum of $16.00 per week, and it is averred that the room to which she was assigned was insecure and so constructed that she could sustain the accident which befell her; and further, that the nurse hav-

ing her in charge was negligent and careless in not remaining with the deceased when she was "laboring under great nervous strain and while in her highly nervous condition" growing out of the combined effect of her ailment and the operation.

The first paragraph of the answer was a denial of the averments of the petition. The second paragraph affirmatively pleaded: (a) that the decedent and her husband selected her own physician and nurse, with which the defendant had nothing to do; and, (b) that the defendant under its rules did not take into its institution insane patients, of which rule the deceased and her husband had knowledge, and that the deceased at the time was insane, but which fact was unknown to the defendant, and that because of her insanity she of her own volition jumped out of the window with the intention of committing suicide and not as the result of any accident. The third paragraph set out in substance that the defendant was a charitable institution created, organized and existing solely for charitable purposes, which purposes are the taking care of, nursing and looking after the sick and wounded; that it was founded upon donations made by charitably disposed persons, which donations were, according to the founders, to be devoted solely to such charitable purposes; that it has no stock or stockholders, and no officers or agents who receive salaries; nor are the nurses in the institution paid any salaries or wages; that it made neither dividends nor profits, nor did any one connected with the institution receive any such; that it received, took care of and looked after many patients who, on account of financial stress, were unable to and did not pay the defendant anything, and that it makes a reasonable charge to those patients who are able to pay and that the funds thus collected are devoted by its trustees exclusively to the support and maintenance of the institution as a charitable one.

The plaintiff demurred to the third paragraph of the answer, which was overruled, after which this order appears in the record:

"Now comes plaintiff and declined to plead further. The cause being submitted on plaintiff's motion and without objection by defendant, and the court being advised, it is ordered and adjudged by the court that plaintiff's petition be dismissed."

To reverse the judgment so rendered, plaintiff prosecutes this appeal.

We might with propriety rest this opinion affirming the judgment upon the condition of the record without its containing the objectionable paragraph three; for, had the demurrer been sustained to it and it had thereby become legally eliminated from the answer, with the pleadings in their then condition the court could scarcely have done less than to dismiss the cause upon submission, since the first paragraph of the answer denied its averments and the second paragraph, which was not denied, pleaded an affirmative defense. But since counsel for both sides have lengthily and learnedly discussed the legal question presented by the third paragraph of the answer and urged upon us its determination, we have concluded to do so.

An examination of the authorities has convinced us that a purely charitable institution, such as defendant's hospital is described in the pleadings to be, is not amenable to its patients, although paid ones, for any damages which they may have sustained growing out of alleged negligence, although such negligence might consist in the violation by the hospital of some duty imposed either by an express or an implied contract. The cases dealing with the subject seem to treat the cause of action as one sounding in tort, although the liability, if any, was created by the negligent failure on the part of the hospital to observe some alleged contractual duty, which is analogous to the rule applied to common carriers in suits by their passengers who sustain contractual relations the one with the other, although the suit is generally treated as one sounding in tort. Bearing this in mind, we find the rule whereby such institutions are absolved from liability thus stated in 13 R. C. L., page 945:

"Immunity in all cases of tort has been claimed for them on the following grounds: (1) Public policy; (2) that the assets or funds of the institution are impressed with a trust for charitable purposes and may not be diverted to other use; (3) that in so far as concerns patients voluntarily entering, whether as pay or as charity patients, they impliedly waive all claim for injuries and assume the risk thereof."

The editor then proceeds on that and succeeding pages to discuss each ground of non-liability, and in the

notes to the text are cases from almost every state in the Union, as well as from the Federal courts, relieving the institution from liability, even in the case of pay patients who thus sustain contractual relations to the hospital. But the courts are not unanimous concerning the particular ground upon which they base their opinions holding the hospital not liable. Only two courts, so far as we are advised, reject all three of the grounds and hold the hospital liable to its pay patients for an alleged negligent failure to comply with the contractual terms under which the patient was received, they being Alabama, in the case of Tucker v. Mobile Infirmary Association, 68 So. R. 4, L. R. A. 1915D 1167, and the Ontario Supreme Court in the case of La Vere v. Smith Falls Public Hospital, 26 Dominion Law Reports 346.

At one time the Supreme Court of the State of Rhode Island joined the small band of courts who repudiated all grounds of non-liability of such institutions, as is shown by the case of Glavin v. Rhode Island Hospital, 12 R. I. 411, 34 Amer. Rep. 675. But the succeeding legislature of that state at its 1882 session promptly renounced that doctrine and enacted a statute excusing the institution from such liability, but preserving the right against the particular servant guilty of negligence.

The first ground found in the excerpt from R. C. L., *supra*—that of public policy—upon which a number of courts base their opinions holding the defendant in this character of case not liable, is upon the theory that such institutions are inspired and supported by benevolences and devote their assets and all their energies to the relief of the destitute, the sick and needy, and that the common welfare requires that they should be encouraged in every way and be exempt from liability from this character of action; that if it should be otherwise held it would operate to discharge the charitably inclined from donating or founding such institutions and might utterly destroy them, thus indirectly casting the burden of doing so upon the state. Some of the cases adopting this view are Duncan v. Nebraska Sanitarium Association, 92 Nebraska 162, Ann. Cas. 1913E 1127, 41 L. R. A. (N. S.) 973, and Taylor v. Protestant Hospital Association, 85 Ohio St. 90, 39 L. R. A. (N. S.) 427.

The trust fund doctrine proceeds upon the idea that the trust created by the founders of the institution as augmented by receipts from pay patients constitutes a charitable trust fund, and that if it should be diverted to the payment of judgments which might be obtained in damage suits against the institution, the purposes of the charity, as well as its donors, would be frustrated, and the charity itself most likely eventually destroyed, and that such a result was never contemplated by the founders or those who in any manner donated to the institution. Some of the cases adopting this theory are Park v. Northwestern University, 218 Ill. 381; Whittaker v. St. Luke's Hospital, 117 S. W. (Mo.) 1189; Perry v. House of Refuge, 63 Md. 20, 52 Am. Rep. 495; McDonald v. Mass. Gen. Hospital, 120 Mass. 432, 21 Amer. Rep. 529; Downes v. Harper Hospital, 101 Mich. 555, 45 A. S. R. 427, 25 L. R. A. 602; Fire Ins. Patrol v. Boyd, 120 Pa. St. 624, 6 A. S. R. 745, 1 L. R. A. 417; Gable v. Sisters of St. Francis, 227 Pa. St. 254, 136 A. S. R. 827; Lyle v. National Home, 107 Fed. 842, and Austin v. Walden Academy, 102 S. W. (Tenn.) 351; 11 L. R. A. (N. S.) 1179.

The theory of the "implied waiver" doctrine is that one who accepts the benefits, accommodations and services of such an institution enters into a relation with it whereby he agrees to exempt it from liability for the negligence of any of its servants in administering the charity, and that the patient thereby assumes the risk growing out of any negligent act of any of those connected with administering the affairs of the institution. Some of the cases holding to this doctrine are Powers v. Mass. Homeopathic Hospital, 109 Fed. 294, 65 L. R. A. 372; Hearns v. Waterbury Hospital, 66 Conn. 98, 33 Atl. 595, 31 L. R. A. 224; Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 45 A. S. R. 427, 25 L. R. A. 602; Bruce v. Central Methodist Episcopal Church, 147 Mich. 230, 110 N. W. 951, 11 Am. Cas. 150, 10 L. R. A. (N. S.) 74; Hordern v. Salvation Army, 199 N. Y. 233, 92 N. E. 626, 139 A. S. R. 889, 32 L. R. A. (N. S.) 62; Kellogg v. Church Charity Foundation of Long Island, 203 N. Y. 191, 96 N. E. 406, Ann. Cas. 1913A, 883, 38 L. R. A. (N. S.) 481; Schloendorff v. Society of New York Hospital, 211 N. Y. 125, 105 N. E. 92, Ann. Cas. 1915C, 581, 52 L. R. A. (N. S.) 505; Hospital St. Vincent, etc. v. Thompson, 116 Va. 101, 81 S. E. 13, 51 L. R. A. (N. S.) 1025.

Text books and other treatises holding a purely charitable institution of the nature of the defendant here immune from liability for this character of suit are Second Cooley on Torts, pages 1011-1013; Jaggard on Torts, Vol. 1, pages 184-187. These works base the non-liability upon the same ground that state institutions engaged in a like service are excused, in that the private but purely charitable institutions are performing a necessary duty which, if not done by them, would in all probability have to be performed through some arm of the state.

While not called upon to take a position relative to the merits or demerits of all of the three respective theories above referred to as grounds for excusing the institution from liability in this character of case (although the first and second ones have been adopted by this court as we shall see) we are not averse to saying that each of them to our minds is founded upon sound logic and convincing reasoning, and while caustic criticism of each of them will be found in some of the opinions, although the same opinion adopts one or the other of them, such criticisms appear to lose sight of the nature and purposes of the defendant and treat it in applying the principles of the law as though it were strictly a private institution. This is true of the opinion in the case of Tucker v. Mobile Infirmary, &c., *supra*, where all the excusing grounds were discarded, but from which there was a dissenting opinion by Judge Mayfield of the Alabama Supreme Court, at the beginning of which he makes this vigorous statement:

"If the law is as it is here (majority opinion) decided to be, is it not strange that no text book writer in England or America has ever been able to learn it? It does seem that such judges and text book writers as Cooley, Kent, Story, Parsons, Shaw, Gibson, Beasley, Bush, Morawetz, Jaggard and others of equal note would have found it out and not have misled the world litigants and world courts for a century or more. . . . . If the decision of this case is to stand as the law of this state, it cries loudly for the legislature of Alabama to do what the legislature of Rhode Island did—put the law of that state in line with that of all the other states by a statute."

The majority opinion in that case treats the question as one altogether between commercially engaged

and profit earning individuals. It reduces the relation of the parties to a cold proposition of business and to the level of demanding of each other "an eye for an eye and a tooth for a tooth," and considers not the charitable and public service features of the institution. We, like the great majority of courts, are unwilling to apply that Shylock view of the matter and to thereby take from the charity the "pound of flesh."

We are not without authority from this court for the position we have assumed herein. In the case of Williamson v. Louisville Industrial School of Reform, 95 Ky. 251, a judgment was sought against defendant, which was a charitable institution having for its purpose the reformation and training of its inmates to habits of industry, &c., because of injuries inflicted through the negligent and wrongful acts of one of its servants. The funds of the defendant therein were contributed by individuals through philanthropic motives, and liability was denied because "these are the funds of the institution controlled by the managers not for their own profit or benefit, but solely for the charitable purposes designated by its organic law."

The case of University of Louisville v. Hammock, 127 Ky. 564, was one wherein the plaintiff sought damages for injuries inflicted by a fellow patient who was demented, or partially demented. The court held that the defendant was liable, but upon the ground that it was not a purely charitable institution, since it was an adjunct of a school of medicine which was maintained and operated for compensation and profit. In the course of the opinion it is recognized that were it not for such profit earning features the defendant would not be liable, the court saying:

"Eleemosynary institutions and other institutions of like character devoted to purely charitable uses whether maintained by government, corporations, or individuals, are exempt from such liability as was here imposed upon appellant on the ground that they are mere instrumentalities brought into being to aid in the performance of governmental or public duty; but such is not the character of hospital maintained by appellant."

Other Kentucky cases dealing with some phase of the legal principle here involved are I. C. R. R. Co. v. Buchannon, 126 Ky. 288; Leavell v. Western Kentucky

Asylum for Insane, 122 Ky. 213, and Ketterer v. State Board of Control, 131 Ky. 287. In the last two cases the defendant was a public charitable institution maintained and supported as an arm of the state government, but, as we have heretofore seen, a private charity performing the same duties occupies the same relation to its beneficiaries, and is under the same obligations to them.

Some of the cases referred to relieve the defendant of liability on the ground that the doctrine of respondeat superior does not apply to purely charitable institutions, but we have not dealt with this feature of the case since the conclusion which we have reached renders it unnecessary. Neither have we overlooked the fact that some of the cases relieving the institution of liability imposes upon it the duty of exercising care in the selection of their servants, which, if they should negligently fail to do, they would be liable. But we have found it unnecessary to consider that proposition, because there is no allegation presenting that issue. Nor do we pass upon the question of the liability of such institutions for conduct purely tortious, affecting members of the public who are strangers to them. We would also not be understood as holding that such institutions would not be liable on their contracts made for the purpose of protecting, looking after and taking care of their physical property, or in supplying themselves with those necessities required for their continued maintenance since upon such contracts they are liable, as are other individuals and corporations. R. C. L., *supra*, 944.

In this opinion we have refrained from taking excerpts from many of the opinions and authorities cited, as well as from analysing their reasoning, contenting ourselves for the sake of brevity with a reference to them, so that the reader, if interested, may pursue a thorough research.

Wherefore, the judgment is affirmed. Whole court sitting.