## Bella Robenson v. Turner.

## Turner v. Sam Robenson.

(Decided June 8, 1923.)

### Appeals from Jefferson Circuit Court (Chancery Branch, Fourth Division):

1. Landlord and Tenant—Evidence Held to Warrant Finding of Emergency frôm Fire Justifying Tenant in Jumping from Window. —In an action by a tenant against her landlord for injuries re-

ceived by the tenant when she jumped from a third story window of a building which was on fire, evidence as to the quantity of smoke in the only stairway held to warrant the jury in finding that the plaintiff was justified in believing that such an emergency existed as rendered it necessary for her to jump.

2. Landlord and Tenant—Evidence Held to Make Issues of Proximate Cause and Tenant's Contributory Negligence in Escaping from Fire Jury Questions.—In an action against a landlord for injuries to a tenant who jumped from a third story window during a fire, evidence held sufficient to take to the jury the issues of the landlord's violation of building ordinances and statute as the proximate cause of the injury, and plaintiff's contributory negligence in jumping.

3. Landlord and Tenant—Evidence Held Not to Show Inside Stairway was Inclosed by "Fire Wall," as Required by Statute.—Within Louisville Building Code, section 161, providing that inside stairways entirely inclosed by fire walls may be used instead of fire escapes, evidence that an inside stairway was inclosed by walls in which there were windows and doors constructed of wood leading into the various apartments did not show justification for failure to provide fire escapes since "fire wall," as used in that section, is one that is non-combustible, and that quality must adhere to the openings in the wall as well as the solid wall itself.

4. Landlord and Tenant—Construction of One Fire Escape Held Not Necessarily Compliance with Building Code.—A landlord of an apartment house did not necessarily comply with Louisville Building Code, section 161, which provides that inside stairways inclosed by fire walls may be used instead of outside fire escapes, and section 153, requiring an apartment house of that type to have at least one fire escape, and as many more as may be necessary for safety, merely by providing one inside stairway, but it was a question of fact under the circumstances and conditions whether the construction of one fire escape complied with the requirements, and therefore it was not error to refuse to direct a verdict for the landlord in an action for injuries to a tenant resulting from the fire.

5. Witnesses—Examination of Witnesses by Court Held Not Error.—Where an assistant building inspector testified for defendants and gave his construction of the duties imposed on the inspectors' department of the city, questions asked by the court to obtain from him the ordinances justifying his interpretation of such duties did not violate the rule that the court is permitted in interests of justice, and to the end that a fair trial to both parties may be had, to ask such questions, and as many as he pleases, as are relevant and competent, if he does so in an impartial manner, without indicating his impression concerning the merits of the case.

6. Appeal and Error—Appellant Cannot Object to Further Examination of Witness with Reference to Underwriters' Rules to Whose Exclusion he Objected.—Where the court on its own motion ex-

cluded evidence of defendant's witness as to the requirements of the underwriters' department, whereupon the defendants excepted to the ruling, and plaintiff's counsel announced he did not object to the statement, and the court permitted the jury to consider it, the defendant could not thereafter complain of cross-examination of the witness with respect to those rules.

7. Appeal and Error—Evidence of Underwriters' Rules Similar to Requirements of City Building Code Held Not Prejudicial to Landlord.—Where a tenant claimed her injuries were proximately caused by the landlord's violation of the City Building Code, evidence of the building regulations of the National Board of Underwriters was not prejudicial to defendants, where those regulations were not substantially different from the sections of the Building Code relied on.

8. Landlord and Tenant—Instruction as to Negligence of Landlord in Storing Lumber in Apartment Building Held Correct Under the Evidence.—Where a tenant charged her landlord with negligence in storing lumber in the basement contrary to Ky. Stats., section 3037g-55 which prohibits such storage without the prescribing of conditions for such storage by the health department, it was not error to give an instruction in the language of the statute without stating what, if any, were the requirements of the health department, there being no evidence that the landlord had made application to the health board to obtain permission to store the lumber, nor that the board prescribed any conditions upon which it might be stored.

9. Damages—$6,500.00 for a Broken Back Resulting in Permanent Curvature Held Not Excessive.—Where plaintiff dislocated two of the vertebrae of her backbone and broke the extreme lower one, which produced a permanent curvature of the spine, causing it to protrude and render her uncomfortable in a sitting posture without the use of cushions, to say nothing of the consequent impairment of her ability to earn money, a verdict awarding $6,500.00 damages was not excessive.

10. Husband and Wife—Husband Who Managed Wife's Apartment Building is Not Liable for Injuries to Tenant Resulting from Fire.—A husband who only managed his wife's apartment building as her agent, the deed being executed to her alone, is not liable for injuries to a tenant proximately caused by the failure to provide the required fire escapes and by the storage of lumber in the basement.

R. RUTHENBURG and EDWARDS, OGDEN & PEAK for Sam and Bella Robenson.

BRUCE, BULLITT & GORDON, WM. MARSHALL BULLITT and GROVER G. SALES for May C. Turner.

Opinion of the Court by Judge Thomas—Affirming the judgment in each case.

Sam Robenson and Bella Robenson, his wife, reside in Louisville and the latter owns a three-story building on Fourth street opposite Central Park known as "Park Apartments." They with their family, consisting of two sons, reside in one of the first floor apartments and May C. Turner, with her husband, resided in the south apartment on the third floor. Somewhere near the hour of 7:20 A. M. on December 1, 1919, a fire broke out in the basement of the Park Apartments in a stack of lumber stored therein, and shortly thereafter Mrs. Turner and her husband were awakened and she went to the front door of their apartment, which opened on the landing of the only stairway in the building. When she opened that door, according to her testimony, the space occupied by the stairway was chokingly filled with smoke, and she also testified that her apartment at that time had a large quantity of smoke in it. She closed the door and procured a towel and went to the wash stand to wet it for use in going down the stairway through the smoke, but because of a draft upon the water by those below her, or from some other cause, there was no water in the hydrant. She again opened the door and the smoke was equally as dense if not more so than at the time of the first opening. Smoke continued to accumulate in her apartment and in the stairway and her husband called to the crowd below for help. In the meantime Mrs. Turner had gotten through the window and was standing on its sill when she was advised as well as importuned by members of the fire department who had arrived upon the scene to jump into the net which they and others were holding. For a moment she hesitated and then yielded and made the leap from which she received severe injuries to her back and resulting in permanent injuries, the most serious of which is curvature of the spine. She sued Mr. and Mrs. Robenson to recover damages for her injuries and in her petition she alleged that defendants were negligent in failing to provide the building with proper fire escapes as required by section 153 of an ordinance of the city of Louisville known as the "Building Code," and also because defendants stored lumber in the basement of the apartment where the furnace for heating it was located contrary to the provisions of subsection 55 of section 3037g of the present Kentucky Statutes, which

is a part of the charter of cities of the first class. The answer traversed the allegations of the petition and contained a plea of contributory negligence, which was denied by reply, and upon trial the jury under the instructions of the court returned a verdict for plaintiff against defendant, Bella Robenson, for $6.500.00; but under the directions of the court to do so the jury found for defendant, Sam Robenson, and to reverse the first judgment defendant, Bella Robenson, appeals (which is the first case in the caption), and complaining of the second one plaintiff, May C. Turner, has prosecuted an independent appeal (which is the second one in the caption). Both appeals are prosecuted upon the same record and will be disposed of in one opinion.

The pertinent part of section 153 of the Building Code of the city says: "Every building three or more stories high used as a hotel, office building, theater, lodging house, apartment house, tenement or for manufacturing purposes shall have at least one fire escape and as many more as may be necessary for safety;" and section 161 is in this language: "Inside stairways entirely enclosed by fire walls, and having a location approved by the inspector of buildings, may be used instead of outside fire escapes." The storing by defendant of the combustible lumber in the basement contrary to the provisions of the statute, *supra,* was alleged in the petition and also that defendants had failed to equip the buildings with any fire escape, and that the stairway furnishing the only means of ingress and egress to and from the apartments, including the third story one occupied by plaintiff, was not entirely enclosed by fire walls and did not supply the failure to provide outside fire escapes or itself be considered as one.

In the appeal by defendant, Bella Robenson, five grounds are urged as errors requiring a reversal of the judgment, which are: (1) failure of the court to sustain the motion for a peremptory instruction in her favor; (2), because the court improperly indulged in an examination of some of defendants' witnesses; (3), the admission of incompetent evidence by plaintiff; (4), error in the instructions, and (5), because the negligence of defendants, if any, was not the proximate cause of plaintiff's injuries, which ground may be appropriately classed and be considered with and as a part of the first one.

1. In support of this ground reliance is made upon the contention set forth in ground (5), and also that plaintiff was guilty of contributory negligence and that the stairway was substantially such as is set forth in section 161 of the Building Code and met all the requirements of it, a part of which (section 153) was the construction and erection of one or more fire escapes to the building. Incidentally it is argued that the evidence showed that the smoke which had collected in the stairway was not of such density as to prevent plaintiff or any one acting with reasonable prudence from using it in making her exit, and that the circumstances did not create an emergency or justify her in believing that it was dangerous to do so and did not authorize her to act in emergency by jumping from the window. But we are unable to agree with that contention, since plaintiff testified that when she first opened the door into the stairway the smoke was so dense and thick therein as to be choking and stifling and in itself dangerous to pass through, and she had no means of knowing whether the fire was in the stairway below her or not, and her testimony as to the condition was corroborated by that of a number of other witnesses including the occupants of the other apartment on the same floor who had made their escape down the stairway some few minutes before, but not without great difficulty and with actual injury to one of them. Some members of the salvage corps and perhaps one of the fire department, and a policeman, fully sustained her testimony and, while it was contradicted by several witnesses for the defendant, still it was a proper issue for the jury and the court submitted it under a properly worded instruction. We are likewise convinced that the question of proximate cause and of plaintiff's contributory negligence may be disposed of in the same manner, i. e., there was abundant evidence on each of them to sustain the finding of the jury in favor of plaintiff and there exist no grounds for reversal on either of those contentions. On the only remaining one in support of ground (1), that the inside stairway was such a one as to excuse defendant from equipping the building with outside fire escapes, it may likewise be said that it is unsupported by the record. It is true that the walls enclosing the space in which the stairway was constructed were made of non-combustible material but there were a number of windows opening from that enclosure

into each apartment of all the stories, as well as doors to the apartments, and those windows and doors were not fireproof. The window frames and casings were constructed of wooden material as well as the doors, and there is proof that smoke will penetrate through such openings much more readily than it will penetrate through metal frames and doors, which are necessary to constitute a fireproof structure, as is required by section 161 of the Building Code, since it is not only in proof but also a scientific fact that a "fire wall," as used in that section, is one that is non-combustible, and which quality must adhere to the openings in the wall as well as the solid wall itself. Therefore, if we should hold that the stairway, if a fireproof one as required by the provisions of section 161 of the Building Code, was sufficient to excuse a further compliance with its section 153 relating to fire escapes, then the contention now under consideration would not be available to defendant, since the stairway was not an inside one as prescribed by section 161, and by reason thereof, according to some of the testimony, the smoke was allowed to penetrate and fill the compartment occupied by the stairway, and to thus produce the danger to plaintiff in attempting to use it and to justify her, as found by the jury, in adopting the course she did in order to escape the consequences of the actual or to her apparently raging fire, or the smoke therefrom. The ordinance, however, is not necessarily complied with by the construction of one fire escape to the character of buildings where they are required, but the responsible party must construct "as many more as may be necessary for safety;" and it is a question of fact under the circumstances and conditions of each case whether the construction of one fire escape complies with the provisions of the law upon the subject, as was held in the case of Kohn v. Clark, 236 Pa. St. 18, 1913E Ann. Cas. 775, and which was referred to with approval by this court in the case of Louisville Trust Co. v. Morgan, 180 Ky. 609. And in determining the question the size of the building, the number of inmates, as well as its architectural arrangement and other material facts may be taken into consideration. Other cases in point under the facts in this case are, Adams v. Cumberland Inn. Co., 117 Tenn. 470; Majorca v. Myers, 115 N. Y. Supp. 923; Arnold v. National Starch Co., 194 N. Y. 21 L. R. A. (N. S.) 178. To hold otherwise would render nuga-

tory to a great extent the beneficial purpose of such statutes and ordinances, since no building to which such laws apply is without at least one inside means or stairway of ingress and egress to each of its apartments; and if such means, although fireproof, may excuse a further compliance with the law then the safety of the inmates would be precarious indeed, for not infrequently the way of ingress and egress though fireproof might be difficult to find and dangerous to use, or be completely shut off from use by the presence of fire in it. We are not only unwilling to adopt such a construction but the very language of the ordinance itself forbids it.

2. During the progress of the trial some of the witnesses testified in a misleading manner and the court for its own enlightenment as well as to develop the true state of facts proceeded to examine them in such manner as only to elicit the truth and without exhibiting any bias for the one side or the other. An assistant building inspector testified for the defendants and proceeded to give his version and construction of the duties imposed on the inspectors' department of the city, and the court by a series of questions sought to obtain from him the ordinance or ordinances justifying his interpretation of such duties, and of that action of the court serious complaint is made under ground (2), but we are of the opinion that the complaint emanates more from the zeal of counsel than from any rule of practice supporting it. In the case of King v. Commonwealth, 187 Ky. 782, the right of the court to examine witnesses is discussed at some length, and while it was recognized as the general rule of practice that the court should not indulge in such examination in a way to convey to the minds of the jurors any partiality of the court towards one side or the other, or to create any notions in their minds as to the impressions of the court concerning the merits of the case, yet it was therein said that "The trial judge has the right, as much so as counsel on either side of the case, to ask any witness a relevant and competent question . . . It often happens in the trial of a case that the judge, who occupies an impartial attitude, may be of great assistance to the jury in asking questions that will develop the truth of the case, and this it is not only his right but his duty to do, even though questions asked may result in developing evidence that would be beneficial to one party and prejudicial to the other. It also sometimes happens that counsel on one side of the case may fail to ask questions

that would be helpful to the jury in reaching a just conclusion for fear that the answers to such questions might be prejudicial to their side, and then again it may occur that counsel, without so intending, will overlook or forget to ask a question or questions that he wanted to ask. But, however this may be, and without reference to the desires or purposes of counsel, the trial judge, in the interest of justice and to the end that a trial fair to both parties may be had, may in an impartial manner, free from any evidence of bias, ask such questions and as many as he pleases as are relevant and competent." The trial judge in this case did not transgress his right as well as his duty as laid down in the King case, and this ground must be dismissed as without merit.

3. The only incompetent evidence complained of under ground (3), was the cross-examination of the assistant building inspector with reference to some rules and regulations of the National Board of Underwriters as contained in the printed rules of that board. The introduction of that evidence came about this way: The witness was asked, "Q. After your examination of this structure, you say it complies with all the requirements of your department? A. Yes, sir; also with the requirements of the Underwriters' Department." The court on its own motion excluded the latter part of the answer with reference to the Underwriters' Department, to which the defendants excepted and plaintiff's counsel announced, "I do not object to that statement," whereupon the court said, "All right, the jury may consider it then." Afterwards the witness was interrogated concerning the regulations of the Underwriters' Department and it is that testimony of which complaint is made. The objection is untenable for two reasons; one is that the testimony concerning the regulations of the Underwriters' Department was admitted because defendants' counsel objected to its exclusion, and the other one is that the rules of the department after being read were not substantially different from the sections of the Building Code, *supra,* and for that reason can not be considered as prejudicial, even if considered as erroneously introduced. This ground, therefore, must be denied.

4. The only error in the instructions of which serious complaint is made relates to that part of the instructions submitting the issue of negligence by defendants, if any, in violating the provisions of subsection 55 of the

section of the statute, *supra,* with reference to the storage of the combustible lumber in the basement of the apartment, and in which the court told the jury that it was a violation of the statute to do so "except under conditions prescribed by the health department of the city of Louisville." The statute inhibits such storage without the prescribing of conditions by the health department and the instruction but followed the language of the statute. The complaint is made that it was error to do so without stating to the jury what, if any, were the requirements of the health department. There might be room for the criticism of the instruction if there was any pretense by defendant that she had complied with any such prescribed conditions in the storage of the lumber that caught on fire and produced the smoke that filled the apartment, but it is not pretended that any application was made to the health board of the city to obtain any right to store the lumber in the basement, or elsewhere on the premises, nor did that board prescribe any conditions upon which the storage might be made, and hence it was impossible for the court to incorporate in its instructions conditions which had never been prescribed.

It is shown by the uncontradicted proof in the case that plaintiff dislocated two of the vertebrae of her backbone and broke the extreme lower one of it (coccyx), and it is virtually destroyed and that its entire removal may eventually become necessary. The fractured vertebrae has produced a permanent curvature of the spine and causes it to protrude and render her uncomfortable in a sitting posture without the use of cushions at her back, to say nothing of the consequent impairment of her ability to earn money. The assessment of the damages, therefore, can not be said in any sense to be excessive.

But little need be said in disposing of the second appeal. Sam Robenson, the appellee in the second case and husband of the appellant in the first one, was at most only the agent of his wife in managing and looking after the apartment and not all of which did he do. She purchased the property and the deed was executed to her alone and we have been cited to no principle of law under which he could be held liable. We, therefore, think that the court properly sustained the motion for a peremptory instruction in his favor.

Wherefore, the judgment on each of the appeals is affirmed.