## FORREST

### v.

## RED CROSS HOSPITAL, Inc.

Court of Appeals of Kentucky.

Feb. 19, 1954.

Fred J. Karem, J. P. Karem, Louisville, for appellant.

John E. Tarrant, James W. Hendricks, Robert T. Burke, Jr., Louisville, amici curiae.

Brown, Eldred, Brown & Tachau, Louisville, for appellee.

SIMS, Chief Justice.

Clara Forrest, while a paying patient in the Red Cross Hospital for colored people in Louisville, allegedly became ill from eating food served her by employees of the institution. She brought this action seeking damages in the sum of $2,550. Her petition avers the food she ate "was represented to be good, wholesome and fit for human consumption, when in fact it contained a foreign substance and was not fit for human consumption as warranted by defendant". The answer, after denying the material averments of the petition, in a third paragraph pleaded the hospital "is a non-stock and non-profit corporation under the laws of Kentucky, purely for charitable and educational purposes of the Negro race and no one derives any pecuniary profits from its operations." A general demurrer was overruled to this paragraph of the answer, plaintiff declined to plead further, her petition was dismissed and she appealed.

In brief, as well as oral argument, plaintiff admits the long-established rule in this jurisdiction is that a charitable hospital, or other charitable institution, is not liable to a patient, although she is a paying patient, for a tort. An examination of our opinions shows that in 1894 this jurisdiction adopted the rule that a purely charitable institution, devoting its income en-

tirely to its maintenance, is not liable for the tort of its agents, servants and employees. Williams v. Louisville Industrial School of Reform, 95 Ky. 251, 24 S.W. 1065, 23 L.R.A. 200; Illinois Cent. R. Co. v. Buchanan, 126 Ky. 288, 103 S.W. 272, 11 L.R.A.,N.S., 711; University of Louisville v. Hammock, 127 Ky. 564, 106 S.W. 219, 14 L.R.A.,N.S., 784; Cook v. John N. Norton Memorial Infirmary, 180 Ky. 331, 202 S.W. 874, L.R.A.1918E, 647; Emery v. Jewish Hosp. Ass'n, 193 Ky. 400, 236 S.W. 577; Pikeville Methodist Hospital v. Donahoo, 221 Ky. 538, 299 S.W. 159; Williams' Adm'x v. Church Home for Females and Inf. for Sick, 223 Ky. 355, 3 S.W.2d 753, 62 A.L.R. 721.

We will not take the time and space necessary to discuss these former opinions. It will suffice to say that the fundamental basis of the rule is stated in the Williams' opinion in 1894, and repeated with more particularity in Averback v. Y.M.C.A. of Covington, 1933, 250 Ky. 34, 61 S.W.2d 1066, where it was said:

"Immunity from liability is usually based on three grounds: (1) Public policy; (2) the assets or funds of the institution are impressed with a trust for charitable purposes, and may not be diverted to other use; (3) those who voluntarily enter the institution * * * impliedly waive all claim for injuries and assume the risk thereof; and we have held that all three theories of non-liability are based on sound logic."

However, plaintiff attempts to avoid this rule by arguing that she is not suing for a tort but her action is based upon the breach of an implied contract that the food served her was warranted to be fit for human consumption. But in the Cook case, 180 Ky. 331, 202 S.W. 874, L.R.A.1918E, 647, we said that although the suit was based upon an employee's negligent violation of some duty imposed by either express or implied contract, the cause of action sounded in tort and is treated as a tort action by the courts. This same line of reasoning was advanced in Lovich v. Salvation Army, 81 Ohio App. 317, 75 N.E.2d 459.

We are next asked by plaintiff to re-examine our many former opinions on immunity and overrule them, as she contends the modern trend is away from immunity and to hold charitable institutions liable for their torts. Plaintiff wants us to disregard the doctrine of stare decisis and to accept what she calls the "fast growing immunity rule". True, some jurisdictions which followed the immunity doctrine have recently changed their positions and now hold charitable institutions liable in tort. Pierce v. Yakima Valley Memorial Hosp. Ass'n, Wash., 260 P.2d 765; Mississippi Baptist Hospital v. Holmes, Miss., 55 So.2d 142, 25 A.L.R.2d 12; Haynes v. Presbyterian Hosp. Ass'n, 241 Iowa 1269, 45 N.W.2d 151; Porto Rico Gas & Coke Co. v. Frank Rullan, 1 Cir., 189 F.2d 397. However, other courts which have recently examined this question have not seen fit to overrule their former opinions holding charitable institutions free from liability for torts. Meade v. St. Francis Hosp. of Charleston, W.Va., 74 S.E.2d 405; Casper v. Cooper Hosp., 26 N.J.Super. 535, 98 A. 2d 605; Felan v. Lucey, Tex.Civ.App., 259 S.W.2d 302; Williams v. Randolph Hospital, 237 N.C. 387, 75 S.E.2d 303.

Unanimity is lacking in the decisions of courts of last resort in the nation on the tort liability of charitable institutions. Indeed, there is great diversity in the opinions on the subject. An examination of the annotations in 25 A.L.R.2d page 29 to 200, at page 142, shows 30 states follow the immunity rule, 15 do not, and in 3 states there has been no decision on the subject. Also, some quite respectable texts favor the general rule that charitable institutions should not be held liable in tort. 2 Restatement of the Law of Trusts, § 402, p. 1234; 10 Fletcher Corps. § 4923, p. 569. The courts are not even in accord as to whether a change of public policy on the question should be made by court or by legislature. See annotations 25 A.L.R.2d 70.

Under the doctrine of stare decisis, courts are reluctant to overrule a long-

standing rule, which it has expressed in many opinions, and adopt a new rule. But in this instance our re-examination of the question convinces us that our present rule is both correct and logical and we refuse to disturb it. We think as did the Supreme Court of Pennsylvania in Gable v. Sisters of St. Francis, 227 Pa. 254, 75 A. 1087, that if and when there is to be any change in the doctrine it ought to be effected not by the court but by the legislature, the ultimate tribunal to determine public policy. To the same effect is the Randolph case, 237 N.C. 387, 75 S.E.2d 303.

We are not convinced that the modern trend is away from the well-reasoned and long-established rule that charitable institutions are not liable for torts. As we gather the reasoning in the opinions from those jurisdictions that have abandoned this well-rooted and salutary policy, it is based upon the theory that private charity has been displaced by a paternalistic government, if not a welfare state, which furnishes free charitable services to the indigent. However, there is still a school of thought in America which does not believe that private charity is a thing of the past and that all burdens of suffering humanity should be placed in the lap of government, state and federal. If immunity from tort be abolished from charitable institutions, larger subscriptions and donations must be obtained to meet heavy premiums on liability insurance, and the pres-ent enormous operating expenses of such institutions will undoubtedly mount to dizzy heights. They are already so high that paying patients in moderate circumstances can hardly afford hospitalization of even moderate duration.

A most exhaustive opinion on the subject under discussion is Pierce v. Yakima Valley Memorial Hosp. Ass'n, Wash., 260 P.2d 765. It gives the history of the doctrine of charitable immunity and collates most of the leading cases and many texts on the subject. Furthermore, it deals extensively with the subject of whether the court or the legislature should make the change in public policy relative to immunity. Justice Hill there dissented relative to the manner in which the public policy should be changed, thinking the legislature and not the court should make it, and Justice Donworth dissented both on that ground and on the merits of the case.

A majority of this court are of the opinion that immunity from tort for a purely charitable institution is a sound and logical doctrine, and we refuse to disturb our adherence thereto for the last 60 years. It is our further view that if there is to be a change in the public policy in this state on the subject, it should be made by the legislature and not this court.

The judgment is affirmed.

CAMMACK, MOREMEN and COMBS, JJ., dissenting.