Clifford ROLAND, Appellant,

v.

CATHOLIC ARCHDIOCESE OF LOUIS-
VILLE, a Corporation, et al.,
Appellees.

Court of Appeals of Kentucky.

Jan. 25, 1957.

Rehearing Denied May 24, 1957.

Ephraim K. Lawrence, Jr., Theodore Wurmser, Lawrence & Duvall, Edward L. Phillips, Louisville, and Williams & Williams, Asheville, N. C., for appellant.

Robert T. Burke, Louisville, for appellees.

STANLEY, Commissioner.

The case calls for a consideration of the exemption of eleemosynary or charitable organizations from liability for torts. The reappraisal of the doctrine and of our broad statements of absolute exemption is confined to the unusual combination of facts of this case.

In an action for damages for personal injuries the circuit court rendered a summary judgment under the decisions of this court that no right of action may be maintained as a matter of law in such cases. The plaintiff appeals.

The appellees are the Rt. Rev. John A. Floersh, Roman Catholic Bishop of Louisville, and the Home for the Aged of the Little Sisters of the Poor, and The Sisters of the Good Shepherd of Eighth Street. The first party is a corporation sole, created by a special legislative act many years ago, and as such is engaged in many religious, educational and charitable activities. The other two parties are also Kentucky corporations maintaining and operating homes

for destitute men and women and for orphaned colored children, as well as other benevolent enterprises. The three parties jointly owned and maintained property at Broadway and Preston Street in Louisville, which had been devised to them for their charitable purposes. The building was three stories in height. The first or street floor was rented to commercial enterprises and the upper floors were rented as living apartments. Five tenants occupied the third floor, one of whom, Clifford Roland, is the plaintiff in this action. His complaint charges that in violation of the statute, KRS 101.700, and certain sections of the Louisville ordinances, and otherwise, the defendants "with gross negligence and wanton and willful recklessness failed to provide proper, adequate and safe exit ways and fire escapes for this plaintiff from his apartment to the outside of the building in the event of fire." The statute cited (in effect at the time of the fire) read:

"Every tenement house over two stories and a basement in height shall be equipped with such fire escapes for each floor as are deemed adequate by the building department. The owner shall keep all the fire escapes in good order and repair. No person shall place any incumbrance before or upon any fire escape. Every tenement house over three stories and a basement in height shall be of fireproof construction."

A penalty of a fine was imposed for violation.

The city ordinances had like requirements.

The complaint alleges that on February 22, 1954, the described building caught fire; the stairway and place of exit were enveloped in flames and the plaintiff's exit from the building was cut off, and he was compelled to climb out a window to escape the fire. He clung to a coping until the flames burned his fingers, and then he fell to the pavement below. The plaintiff suffered serious injuries of severe burns and multiple fractures. He is apparently completely and permanently disabled. He asked judgment for a large sum for special and general damages.

The defendants traversed the allegations of negligence and damages, pleaded contributory negligence and their immunity from liability by reason of their charitable status. The basis of the latter pleading was specifically set forth in an affidavit supporting the defendants' motion for a summary judgment, which, as stated, was sustained. They particularly stated that the property involved was held in trust and the income therefrom devoted to the objects of public charities. It is obvious that with the legal question of immunity or non-liability eliminated, there were issues of material facts to be tried, and the summary judgment would not have been rendered. Civil Rule 56.03. We address ourselves to the determinative question.

█ This court has consistently affirmed (although not always with unanimity) that a charitable institution is not liable for torts of its agents and employees. St. Walburg Monastery, etc. v. Feltner's Adm'r, Ky., 275 S.W.2d 784. The conclusion of immunity, as stated in Cook v. John N. Norton Memorial Infirmary, 180 Ky. 331, 202 S.W. 874, L.R.A.1918E, 647, and Forrest v. Red Cross Hospital, Ky., 265 S.W. 2d 80, rests on the grounds of (1) public policy, (2) security from dissipation or diversion of trust funds, and (3) implied waiver of negligence or assumption of risk of injury in accepting benefactions of the charity. These are the generally stated grounds, but all of them have been assailed by many courts as being unsound. The Red Cross Hospital case takes note of the sharp division of opinion among other courts and refers to the exemplification of this diversity in the exhaustive

annotations entitled, "Immunity of nongovernmental charity from liability for damages for tort," 25 A.L.R.2d 29, et seq.

The opinions which have placed this court among those declaring complete exemption from liability do not show that the conception of partial or limited liability has been hitherto considered, or, indeed, that there has ever been any need for such consideration in relation to circumstances like any of the conditions in the case now before us. Therefore, our decision in this case is in a material degree unfettered by the rule of stare decisis notwithstanding the apparent commitment to the complete immunity from any legal liability. We note the cases.

In Robinson v. Second Presbyterian Church, 191 Ky. 288, 230 S.W. 51, the church had rented property as a private residence without having complied with an ordinance which required fire escapes. The building, while being used as a boarding house, burned and a boarder was injured when he was compelled to jump from a window. The court had directed a verdict for the defendant. We affirmed but it was on the sole ground of an absence of proof that the church management knew the building was being used as a lodging house.

In Williams v. Louisville Industrial School of Reform, 95 Ky. 251, 24 S.W. 1065, 23 L.R.A. 200, and University of Louisville v. Hammock, 127 Ky. 564, 106 S.W. 219, 14 L.R.A.,N.S., 784, the institutions were in part governmental agencies. Pikeville Methodist Hospital v. Donahoo, 221 Ky. 538, 299 S.W. 159, Forrest v. Red Cross Hospital, Ky., 265 S.W.2d 80, and St. Walburg Monastery of Benedictine Sisters of Covington, Kentucky, v. Feltner's Adm'r, Ky., 275 S.W.2d 784, were cases involving charitable hospitals in which patients suffered injuries through negligence of attendants and nurses. In Averback v. Y. M. C. A. of Covington, 250 Ky. 34, 61 S.W.2d 1066, a patron of a Y. M. C. A. was injured, as alleged, by a defect in a swimming pool. In Williams' Adm'x v. Church Home for Females and Inf. for Sick, 223 Ky. 355, 3 S.W.2d 753, 62 A.L.R. 721, a paying inmate in a church home and hospital was killed through the negligence of an employed elevator operator. In Emery v. Jewish Hospital Ass'n, 193 Ky. 400, 236 S.W. 577, a hospital employee hired in violation of the child labor statute was injured in operating an elevator. In our leading case of Cook v. John N. Norton Memorial Infirmary, 180 Ky. 331, 202 S.W. 874, L.R.A.1918E, 647, the action by a patient of a hospital was based upon negligence of nurses and attendants, and we specifically avoided expressing an opinion on the question of liability of such institutions for tortious conduct affecting members of the public who are strangers to the charity. In Illinois Cent. R. Co. v. Buchanan, 126 Ky. 288, 103 S.W. 272, 11 L.R.A.,N.S., 711, the court held that a hospital organization maintained by a railroad company and its employees for their benefit, and regarded as charitable, was not liable for injuries resulting from malpractice of surgeons whom the railroad company had employed; but if it had failed to select and employ skillful surgeons and attendants, the company would be liable.

In Emery v. Jewish Hosp. Ass'n, 193 Ky. 400, 236 S.W. 577, there is a shadowy distinction in one respect and complete distinction in others. A boy operating an elevator in a hospital was injured. He had been employed in violation of the Child Labor Law. By a divided court, in holding there was immunity from liability, we pointed out that the Child Labor Law only imposed a penalty and merely deprived the employer of the defenses of contributory negligence and assumption of risk and did not have the effect of making the employer liable for negligence; therefore, the court concluded the charity could not be held liable. (It is the minority view of courts generally that a charity is not liable for negligent injury of a servant. Notes,

14 A.L.R. 581; 23 A.L.R. 923; 86 A.L.R. 494; 21 A.L.R.2d 89. It may be also interpolated that we have held that an employer of a child in violation of the law is in effect the insurer of the child's safety. Louisville Woolen Mills v. Kindgen, 191 Ky. 568, 569, 231 S.W. 202.) But there is a clear distinction in the conditions in the instant case. The relation between the parties was that of ordinary landlord and tenant; and since the requirement of the statute and ordinances that certain kinds of buildings be equipped with fire escapes is mandatory, a failure to comply therewith is wrongful as well as negligent. Mullins v. Nordlow, 170 Ky. 169, 185 S.W. 825. And we have held that an occupant of such building whose escape down a stairway was cut off so she was compelled to jump from a window could recover damages of the owner of the building. Robenson v. Turner, 199 Ky. 642, 645, 251 S.W. 857.

Differentiating circumstances in the case at bar are three-fold, namely:

(1) The allegations are of corporate or administrative negligence in violating a duty imposed by a penal statute and ordinances for the safety of all persons situated as was the plaintiff, and that duty was imposed upon all owners of such property without any exception or exemption from obedience.

(2) The property concerning which there was negligence was not being used in the services of the charities but was commercial property, held and rented as a landlord to produce income, albeit income which was used in conducting the charities.

(3) The person injured was a stranger to the charities, being but a tenant in the property; hence, there was no sort of implied waiver or assumption of risk by having become a beneficiary.

In studying the many foreign cases dealing with the subject, one becomes lost in the thicket. It is said in Foster v. Roman Catholic Diocese, 116 Vt. 124, 70 A.2d 230, 232, 25 A.L.R.2d 1, that the cases may be classified into three groups, namely: (1) those which deny there is any liability whatever; (2) those which hold there is no immunity whatever; and (3) those which hold there is partial or qualified liability, or that there is "liability for the benefit of certain classes of plaintiffs but not for others or against the defendant for negligence in some ways but not in others." The Vermont court observes that generally the weight of authority numerically lies with the non-liability jurisdictions but that the trend of the more recent cases is towards total liability. Several courts have departed from their previous acceptance of the rule of complete exemption. See reference to this trend in our Red Cross Hospital case, supra, 265 S.W.2d 81; also, the Annotations in 21 A.L.R.2d 29.

A review of the cases summarized in the annotations, 25 A.L.R.2d 29, which dealt with the doctrine of partial liability upon the several different grounds reveals a diversity of opinion as to each of them.

(1) The cases dealing with corporate or administrative negligence, or breach of a non-delegable duty, may be found in Sec. 28, p. 112.

(2) Distinctions are drawn between charitable and noncharitable activities, or activities which incidentally yield revenue. As stated in note, Sec. 33, p. 131, 25 A.L.R.2d, "most courts which have considered the question as a distinct issue hold, even in the absence of a statutory provision, that there is liability for negligence in the course of activities incidental to the corporate powers but primarily commercial in character though carried on to obtain revenue to be used for the charitable purposes of the corporation." See also Sec. 33 and 34, pp. 130 et seq. And, again, some courts draw a line between liability for breach of statutory, as distinguished from common law, duties. Sec. 36, p. 138.

(3) The cases which have considered the question of liability to strangers and

non-liability to beneficiaries are collected in Sec. 21, p. 89, et seq. These cases also recognize a distinction where there was corporate negligence and where the negligence was of subordinate employees. Of course, the particular relationship, even of so-called strangers, may be important, e.g., visitors or servants or outsiders. Sec. 26, p. 108. The rule that exemption does not extend to torts committed against complete strangers, such as by the operation of an automobile on the highway, seems to be quite generally recognized (Sec. 23, p. 91) and is sustained upon sound reasons by the weight of authority. 10 Am.Jur., Charities, Sec. 153; 14 C.J.S., Charties, § 75; Foster v. Roman Catholic Diocese, 116 Vt. 124, 70 A.2d 230, 25 A. L.R.2d 1. In such a case, Kellogg v. Church Charity Foundation, 128 App.Div. 214, 112 N.Y.S. 566, 570, the court observed that the implication of an intention of donors of funds that they shall be used for the designated charitable purposes only and the implied acquiescence in this intention by persons who accept the benefits of the charity and "in that way spell out a waiver by such persons of any responsibility of the institution for the negligence or torts of its servants" is "a rather ingenious or far fetched ground." The court then adds, "But no such acquiescence or waiver can be attributed to an outsider; to a person run over in the highway by the ambulance of such an institution by the negligence of its driver * * *." A majority of the cases express substantially the same view with respect to the policy of diverting trust funds for the payment of tort judgments. The Vermont case, Foster v. Roman Catholic Diocese, 116 Vt. 124, 70 A.2d 230, 25 A.L.R.2d 1, shows the theory of exemption was first introduced in an English case in 1848 but repudiated in 1866 and both England and Canada now hold a charity to the universal standard of care. The court fully considered the trust fund theory, and upon precedent and reason regarded it as unsound and held there could be recovery of damages because

of the Diocese's alleged negligence and maintenance of a public nuisance in permitting ice to accumulate on the sidewalk in front of a church by faulty construction and maintenance of the premises.

The increasing modern hazards to life and limb and the growing sense of social responsibility may not be ignored. Nor may we regard with complete detachment the availability of indemnifying and liability insurance. Individuals and commercial enterprises quite generally, and some charitable institutions also, carry such insurance to compensate persons who may be injured and to protect themselves against loss or liability from negligence. The State has recognized the injustice that may result from governmental immunity by providing for compensating persons for damages sustained to either person or property as a proximate result of negligence on the part of the Commonwealth or any department or of its agents or employees, KRS 44.070, et seq., and by authorizing counties and boards of education to carry insurance for the benefit of persons who may suffer injury through negligence of their agents and servants. KRS 67.180, 67.185, 67.186 (covering county hospitals), 160.310. Attention may be called to Williams' Adm'x v. Church Home, etc., 223 Ky. 355, 3 S.W.2d 753, 62 A.L.R. 721, and Taylor v. Knox County Board of Education, 292 Ky. 767, 167 S.W.2d 700, 145 A.L.R. 1333, for the distinction between *indemnifying* and *liability* insurance as it may affect recovery by an injured person of a charity or governmental agency which is exempt from legal responsibility under the law.

In evaluating the apparent conflict between the principle of aiding charities of a public nature by exempting them from liability for tortious acts and the principle of a citizen's right to recover compensation for injury suffered through the tortious act of another, we cannot help but see the justice of limiting or restricting the rule of absolute immunity, nor avoid the force of logical grounds of modern decisions

and the weight of judicial opinion that there should be a limitation of immunity in certain cases.

When the question of liability for torts first came before the courts, private charities were largely small institutions with limited means. Nowadays, on the one hand are the complexities and hazards of modern life and on the other, the growth and development of philanthropic foundations with large funds, engaging in many and varied enterprises, both commercial and charitable. It might come as a shock if such foundations should claim immunity and the courts hold them to be absolutely free from liability for all tortious wrongs. But the same rule must apply to both the great and the small.

It is neither moral nor just that a stranger to a charity who has been injured, as is alleged in the present case, as the result of the management having violated safety laws in relation to an activity which was no part of the operation of the charity itself, should bear all the burden and the wrong-doer be entirely relieved. Doubtless, the extended hospital services which the plaintiff has received because of his injuries were in part at the expense of funds of other charitable trusts. This exemplifies the fact that often the immunity of one charity imposes a burden upon another.

The law should keep pace with moving events of everyday life, and the courts within bounds should shape the law to conform. The eminent Justice Cardozo in a series of lectures, first published in 1921 under the title, "The Nature of Judicial Process," said, "Law is, indeed, an historical growth, for it is an expression of customary morality which develops silently and unconsciously from one age to another." (p. 104) He affirmed the view that if a rule continues to work an injustice, it should be retested and must eventually be reformed. p. 23.

■ We have not overlooked appellees' argument of exemption from tort liability that the very property involved in this case was regarded (with other real estate owned by several religious and charitable institutions) as exempt from taxation since it was producing income for the charities. City of Louisville v. Presbyterian Orphans Home, 299 Ky. 566, 186 S.W.2d 194. There is a clear distinction. Exemption from taxation is by command of § 170 of the Constitution. Generally speaking, tax exemption is founded upon the ground that as there is benefit to the public, the public should, therefore, relieve the charity of the tax burden. In cases of tort responsibility it is an individual who has to bear the burden of injury through a wrongful act. There is no reciprocity.

■ The conclusion of the court is that with the combination of the three major factors alleged in the present case, namely (1) corporate negligence in failing to perform a statutory duty, (2) merely income-producing property, and (3) injuries to a stranger to the charities, the plea of immunity is not available to the appellees. This is as far as we are required to go. It will be time enough when a case is presented with any of these factors absent to determine what the decision may be.

The judgment is, therefore, reversed, that the issues of fact may be tried by a jury.