HARRIET F. DALTON, PLAINTIFF-APPELLANT, v. ST. LUKE'S CATHOLIC CHURCH, &c., *ET ALS.*, DEFENDANTS-RESPONDENTS.

Argued February 4, 1958—Decided April 28, 1958.

*Mr. Harry H. Chandless, Jr.,* argued the cause for the appellant (*Messrs. Bartel & Sartoga,* attorneys).

*Mr. Jack Rinzler* argued the cause for the respondents (*Messrs. Feder & Rinzler,* attorneys).

The opinion of the court was delivered by
JACOBS, J.  The Law Division entered summary judgment against the plaintiff and in favor of the defendant St. Luke's Catholic Church, Hohokus.  The plaintiff appealed and we certified under *R. R.* 1:10–1(*a*).

The plaintiff alleges that the injury she suffered when she fell on May 27, 1956 in the vestibule of the church was the result of its negligent conduct. Her complaint originally named the pastor of the church and its insurance carrier as additional defendants but the proceedings against them have been dismissed (*cf*. 2 *Restatement, Agency* § 352 (1933); 29 *Am. Jur., Insurance* § 1080 (1940)) and they are not before us on this appeal. The defendant moved for summary judgment and submitted supporting affidavits which set forth that the plaintiff was in the vestibule of the church on her way to mass and that the defendant, as a religious eleemosynary institution, is immune from tort responsibility to the plaintiff, a beneficiary of its charitable activities. The plantiff filed affidavits in opposition, asserting that she was not a member of St. Luke's Catholic Church, Hohokus parish, or a beneficiary of the charitable activities of the church, and alleging that the pastor of the church had acknowledged (a) that the accident had resulted from the negligence of the church, (b) that a mat which was usually in the vestibule was not there when the accident occurred, (c) that the mat had been taken to "another part of the church because of a bingo game that had been conducted there," and (d) that there was a person "or persons whose duty it was to see that the mat was returned to the vestibule of the church and that such persons had neglected their duty." The motion for summary judgment was granted under the asserted immunity of charitable institutions which was originally announced in *D'Amato v. Orange Memorial Hospital,* 101 *N. J. L.* 61 (*E. & A.* 1925) and was discarded today in *Collopy v. Newark Eye and Ear Infirmary,* 27 *N. J.* 29 (1958).

*Collopy* dealt with a hospital and the suggestion has been made that its holding should be limited so as to exclude churches and similar charitable institutions. But we find no basis for such limitation since every reason advanced by this Court for its holding in *Collopy* is equally applicable here. See *Foster v. Roman Catholic Diocese,* 116 *Vt.* 124, 70 *A. 2d* 230, 25 *A. L. R. 2d* 1 (*Sup. Ct.* 1950); *Malloy*

*v. Fong,* 37 *Cal.* 2d 356, 232 *P.* 2d 241 (*Sup. Ct.* 1951); *Geiger v. Simpson Methodist-Episcopal Church,* 174 *Minn.* 389, 219 *N. W.* 463, 62 *A. L. R.* 716 (*Sup. Ct.* 1928). But *cf. Lyon v. Tumwater Evangelical Free Church,* 47 *Wash.* 2d 202, 287 *P.* 2d 128 (*Sup. Ct.* 1955) criticized in *Westberg, The Questionable Status of the Charitable Immunity,* 31 *Wash. L. Rev.* 287 (1956). See, also, *Hunsche v. Alter,* 145 *N. E.* 2d 368 (*Ct. of Common Pleas of Ohio, Hamilton County* 1957); 26 *U. Cin. L. Rev.* 646 (1957). The New Jersey cases which applied either the immunity or the exception thereto recognized no distinction which turned on the issue of whether the particular charity catered primarily to the well-being of the body, the mind or the spirit (see *Bianchi v. South Park Presbyterian Church,* 123 *N. J. L.* 325, 330 (*E. & A.* 1939)); and it may be noted that the first instance in which the exception was applied to impose tort liability involved a church rather than a hospital. See *Simmons v. Wiley M.E. Church,* 112 *N. J. L.* 129 (*E. & A.* 1934).

The defendant cites *R. S.* 54:4–3.6 which provides for the tax exemption of property used for educational, religious and charitable purposes and *R. S.* 5:8–24 which authorizes games of chance when the proceeds are to be devoted to such purposes. These enactments evidence the Legislature's laudable desire to assist charitable institutions in just and equitable manner but they shed no light whatever on the immunity. See *Roland v. Catholic Archdiocese of Louisville, Ky.,* 301 *S. W.* 2d 574, 579 (*Sup. Ct.* 1957). As *Collopy* pointed out, the Legislature has broadly empowered all nonprofit corporations (including religious institutions (*R. S.* 16:1–4)) to sue and be sued and has never in any form voiced approval of the immunity of any charitable institutions although it has expressly legislated for immunities in other fields. See *Cloyes v. Delaware Tp.,* 23 *N. J.* 324, 331 (1957).

The defendant contends that the overturning of the immunity should have prospective rather than retrospective application. In *Arrow Builders Supply Corp. v. Hudson Terrace Apts.,* 16 *N. J.* 47 (1954), we recently noted that

our courts have consistently adhered to the prevailing doctrine that the overruling of a judicial decision is retrospective in nature (*Fox v. Snow*, 6 *N. J.* 12, 14 (1950); *Ross v. Board of Chosen Freeholders of Hudson County*, 90 *N. J. L.* 522, 527 (*E. & A.* 1917)); we recognized that much had been written in the law reviews on the issue of whether the overturning of a prior decision upon which the litigant had actually guided himself should not justly be confined to future transactions (*Note, Prospective Operation of Decisions Holding Statutes Unconstitutional or Overruling Prior Decisions*, 60 *Harv. L. Rev.* 437 (1947)); but we declined to deal with the conflicting social and individual considerations which had been advanced since we were satisfied that there had been no justifiable reliance on the overruled decision. Here also we are satisfied that the circumstances do not in any event call for a departure from the prevailing rule that the overturning of a judicial decision is retrospective in nature.

The validity of the immunity has been questioned in our State for a considerable period of time. In *Woods v. Overlook Hospital Ass'n*, 6 *N. J. Super.* 47 (*App. Div.* 1949), the Appellate Division pointed out that it had been vigorously attacked in academic circles and in recent decisions and quoted from the well-known opinion in *President and Directors of Georgetown College v. Hughes*, 76 *U. S. App. D. C.* 123, 130 *F. 2d* 810 (*D. C. Cir.* 1942), where Justice Rutledge had dealt exhaustively with the subject and had concluded that the considerations of public policy against the immunity far outweighed those in support. In *Rafferzeder v. Raleigh, etc., Memorial Hospital*, 33 *N. J. Super.* 19 (*App. Div.* 1954), *certiorari* granted 17 *N. J.* 557 (1955), the Appellate Division again strongly questioned the immunity although it was still obliged to apply it; after this Court granted certification the matter was settled and the proceeding was dismissed. In his discussion of *Rafferzeder*, Professor Cowan predicted that the immunity was about to be discarded by this Court. See *Cowan, Torts*, 10 *Rutgers L. Rev.* 115, 119 (1955). In *Lindroth v. Christ Hospital*,

21 *N. J.* 588 (1956), Justice Brennan's language gave further evidence of the impending overturning of the immunity and in *Lokar v. Church of the Sacred Heart,* 24 *N. J.* 549 (1957) three of the six participating members of this Court affirmatively voiced their opposition to it. It thus appears that for some time past there has been no reasonable basis for reliance on the unimpaired continuance of the immunity; indeed, reliance has very little place anywhere in the field of torts and the defendant has not suggested that its standard of care or the scope of its insurance coverage was actually influenced by the immunity. All of the courts throughout the country which have heretofore rejected the immunity have done so retrospectively and we see no just reason for doing otherwise. See *Hart & Sacks, The Legal Process: Basic Problems in the Making and Application of Law* 654 *et seq.* (*Cambridge Ten. Ed.* 1957).

The final point requiring mention is the defendant's contention that the dismissal of the action against the pastor of the church compels the dismissal of the action against the church itself. Apparently it seeks to assimilate the plaintiff's action to one in which the principal is being charged with legal responsibility for an allegedly negligent act of its agent; in such instance a finding that the agent's act was not negligent ordinarily precludes a verdict against the principal. See *Vaniewsky v. Demarest Brothers Co.,* 106 *N. J. L.* 34 (*Sup. Ct.* 1929), affirmed 107 *N. J. L.* 389 (*E. & A.* 1931); *Prendergast v. Jacobs,* 110 *N. J. L.* 435 (*E. & A.* 1933). But in the instant matter the complaint does not rest on any charge that the pastor engaged in an act which was negligent and which resulted in injury to the plaintiff; it rests on the charge that the church failed in its own responsibility to the plaintiff to exercise due care in the maintenance of its premises. See *Phillips v. Library Co.,* 55 *N. J. L.* 307, 310 (*E. & A.* 1893); *Gibeson v. Skidmore,* 99 *N. J. L.* 131, 133 (*E. & A.* 1923); *Hickman v. Dutch Treat Restaurant, Inc.,* 3 *N. J.* 460, 464 (1950); *Gudnestad v. Seaboard Coal Dock Co.,* 15 *N. J.* 210, 219 (1954). *Cf. Lokar v. Church of the Sacred Heart, supra,*

*24 N. J.* at *page* 552. The charge may be established by a showing that the premises were negligently permitted to remain in such condition as to cause the injury without any assertion or proof of negligence or legal responsibility on the part of the pastor. This evidently was the position taken by the trial judge who expressed the view that the proper maintenance of the premises was the legal responsibility of the church and that the janitor's failure to replace the mat which he had removed was also its legal responsibility. We find the defendant's contention to be without merit. See *Devine v. Kroger Grocery & Baking Co.,* 349 *Mo*. 621, 162 *S. W. 2d* 813, 816 (*Sup. Ct.* 1942); *Newman v. Fox West Coast Theatres,* 86 *Cal. App. 2d* 428, 194 *P. 2d* 706, 708 (*Ct. App.* 1948); *S. H. Kress & Co. v. Maddox,* 201 *Okl.* 190, 203 *P. 2d* 706, 709 (*Sup. Ct.* 1949).

Reversed, with direction for a new trial.

HEHER, J. (dissenting). I would affirm the judgment for the reasons given in my dissenting opinion in *Collopy v. Newark Eye and Ear Infirmary,* 27 *N. J.* 29.

BURLING, J. (dissenting). I dissent from the majority position for the reasons set forth in my dissenting opinion in the recent case of *Collopy v. Newark Eye and Ear Infirmary,* 27 *N. J.* 29. Accordingly, I vote to affirm the judgment from which the appeal is taken.

*For reversal*—Chief Justice WEINTRAUB, and Justices WACHENFELD, JACOBS, FRANCIS and PROCTOR—5.

*For affirmance*—Justices HEHER and BURLING—2.